LEMMON, Judge.
Gilbert Mitchell was injured while assisting in the unloading of a shipment of structural steel delivered to his work location by truck. When one bundle broke, Mitchell was struck by some falling pieces of steel and thrown to the ground.
Mitchell sought recovery for his injuries against Hepinstall Steel Company, the supplier of the steel, and Truck Service, Inc., whose driver delivered the steel and participated in the unloading operation. The trial court found that the driver had negligently attached the cable from the winch truck to the metal band by which the steel was bundled, which band was not adequate for the purpose of lifting the bundle. Since this negligence was adjudged the cause of the accident, the trial court awarded Mitchell a $15,000.00 judgment against Truck Service and dismissed his suit against Hepinstall. Truck Service appealed, and Mitchell also appealed the dismissal of Hepinstall and the inadequacy of the award.
On appeal, Truck Service admitted that the truck driver was negligent (while not conceding that its truck or its employee had been adequately identified), and Mitchell voluntarily dismissed Hepinstall from the appeal.
Mitchell’s employer, W. S. Young and Company, Inc., was the contractor engaged in the construction of an electric transmission line in St. James Parish for Louisiana Power and Light Company, who had ordered structural steel from Hepinstall. Documentary evidence established that one lot (30,000 pounds) of steel was shipped on the day of the accident from Hepinstall’s plant to W. S. Young’s work location via truck owned by Truck Service. The shipping order was signed by Casey Myers, another employee of W. S. Young who was in charge of unloading the truck. Myers could not read or write, except to sign his name, and thus could not identify the truck as belonging to Truck Service, although he did testify that he signed the paper when the unloading was completed. Mitchell did positively identify the truck, and the documentary evidence supports this assertion.
We conclude that there is adequate proof that Truck Service owned the truck involved in the unloading operation in which Mitchell was injured. That company is therefore liable for the negligent acts of the driver whom it employed.
However, Truck Service primarily seeks to avoid liability on the basis that Mitchell contributed to causing the accident by assuming the risk of injury in voluntarily exposing himself to a known and obvious hazard.
Mitchell had been employed by W. S. Young for about three weeks prior to the accident as a truck driver, but on this particular day he was assigned for the first time to work as a “swamper” and to assist in unloading the steel from the truck.
As stated previously, Casey Myers was in charge of the unloading and was operating the winch truck. There was a nylon sling and a cable sling available for use in unloading, and Mitchell was to get onto the delivery truck and fasten the steel bundle with these devices. However, the truck driver interjected himself into the operation, attached the cable to one of the metal bands which bound the bundle, and gave Myers the signal to hoist the steel. Myers *327 objected to this procedure, since he had previously lost a bundle in the same manner and had been required to pick up the scattered steel by hand. They then used the sling for awhile, but the driver later hooked the middle strap of another bundle onto the cable from the winch truck. As this load was being guided by Mitchell, the strap broke and the falling steel struck Mitchell.
Myers had done this type of work for over 20 years and was aware that the strap was intended for bundling and not for support of the weight of the steel. He told Mitchell, who didn’t know too much about this type of work, to simply keep the bundle level with his hand btit to stay clear.
Mitchell, who had worked as a truck driver transporting automobiles for the previous 12 years, testified that he realized the method employed was dangerous, but he didn’t object because he wasn’t in charge. He did tell the driver that this method was improper, but yielded to the driver’s insistence that he had unloaded steel this way many times before.
We do not believe that this is a proper case for application of assumption of risk. The basis of the defense is the express or implied consent of the injured person to relieve the negligent party of his obligation of reasonable care toward him. The consent to assume the risk must be made with full knowledge and understanding of the consequences, and that consent must be completely free and voluntary. All of the facts and circumstances surrounding the implied consent must be considered in determining the applicability of the defense.
Mitchell was employed to perform manual labor, and he did as he was told instinctively and without question. While he admitted in response to questions upon cross-examination that he was aware of the danger involved, we are convinced that after reviewing all of the testimony that he did not willingly, freely and knowingly choose to relieve the truck driver of the obligation of safe conduct toward him. He simply surrendered his better judgment in reliance on the superior work experience of the other two persons and in subjection to the authority of the person in charge of the unloading operation.
We therefore conclude that the trial judge properly rejected the defense of assumption of risk.
As to quantum, the trial court awarded $5,000.00 for pain and suffering and $10,000.00 for impairment of earning capacity.
In the January 29, 1968 accident Mitchell sustained a spiral fracture of the first metatarsal of the right foot accompanied by lacerations and contusions of the lower right leg. He also complained that his fall to the ground on his back aggravated or reinjured a preexisting back condition, from which permanent disability has resulted.
X-rays on April 1, 1968 revealed that the fractured toe was healed. Mitchell was followed by the treating physician for the foot and leg injury through September, 1968. At the time of trial there was no residual disability of the foot and leg.
Neither Truck Service nor Mitchell question the amount of the award for pain and suffering, but Truck Service contends that the award for impairment of earning capacity should be reversed in its entirety, since this particular accident was not related to Mitchell’s 15% permanent disability of the back and resulting inability to perform bending or lifting of weights in excess of 50 pounds. On the other hand, Mitchell contends that the $10,000.00 award is inadequate to compensate him for the permanent limitation of working ability.
Mitchell had been a patient of Dr. Linwood Carter since 1964. He had originally injured his back in March, 1966 and again in July, 1967, after which time he had consistent back complaints. Another accident *328 in December, 1967 caused an increase in the back pain.
On January 12, 1968 (17 days before the W. S. Young accident), Mitchell was examined by Dr. Carter, who found paraver-tebral muscle spasm and low back pain radiating into the hip and across the abdomen. He recommended hospitalization and testing, since these symptoms were indicative of a herniated disc.
Mitchell next consulted Dr. Carter on February 2, 1968, four days after the W. S. Young accident. Dr. Carter found his condition worse and convinced him to enter the hospital. After a myelogram confirmed herniated discs at L-4 and L-S, surgery was performed by Dr. Donald Richardson. Mitchell remained hospitalized through March 6, 1968, at which time he was discharged with the disability evaluation indicated above.
Since the surgery Mitchell has attempted to work as a truck driver but has been hampered by his inability to perform loading and unloading operations.
In arguing that the disability is not related to this accident, Truck Service points out that neither the doctor who checked Mitchell immediately after the accident or Dr. Carter, the treating physician, had any notation in their records of back injury sustained in the January 29 accident. It is also urged that Dr. Carter diagnosed the herniated disc prior to the accident.
However, Dr. Carter was convinced and so testified that the January 29 accident aggravated and worsened the preexisting back condition. And it was not until after the accident that the diagnosis of a herniated disc was confirmed.
The trial judge was impressed by the fact that Mitchell had been continuously engaged in strenuous work activity for at least the previous 12 years and was so engaged at the very moment of the accident. Since the accident he has not been able to perform any work which required strenuous manual labor. This finding of fact supports his conclusion that the accident aggravated his preexisting back condition.
We have reviewed the record and found that there was sufficient evidence upon which the trial judge could base this conclusion. We therefore hold that the trial judge did not commit manifest error in finding that this accident caused an aggravation of Mitchell’s preexisting back condition.
As to the amount awarded for the extent that his injury contributed to Mitchell’s permanent partial disability, the trial court is vested with much discretion. Mitchell was a 42 year old manual laborer who earned $6,000.00 to $7,000.00 annually prior to the accident. If this accident were the sole cause of a complete inability to perform further manual labor, an award of $10,000.00 would be grossly inadequate to compensate him for the loss of earning capacity. However, the record contains ample evidence that Mitchell suffered from a severe back condition prior to the accident, although he was able to work. More importantly, the record further indicates that Mitchell’s disability following the accident was classified as partial and limited, leaving inconclusive a determination of the issue of whether or not he is totally unable to engage in gainful employment. Under these facts and circumstances, we cannot say that the award was either inadequate or excessive or that the trial judge abused his discretion.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.