353 So.2d 744 (1977)
Orville COON
v.
W. S. BLANEY, Jr., d/b/a W. S. Blaney, Jr. Construction Company.
No. 6210.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1977.
Rehearing Denied January 12, 1978.
Writ Refused February 24, 1978.
*745 Wm. Henry Sanders, Jena, for plaintiff-appellant.
Griffing & Scott, George F. Griffing, Jonesville, Stafford, Randow, O'Neal & Smith, Hodge O'Neal, III, Gist, Methvin & Trimble, David A. Hughes, Alexandria, for defendant-appellee.
Before DOMENGEAUX, WATSON and JOHNSON, JJ.
WATSON, Judge.
This is a suit in tort brought by Orville Coon against defendant, W. S. Blaney, Jr., d/b/a W. S. Blaney, Jr. Construction Company, to recover for personal injuries sustained on August 31, 1974. The matter was consolidated for trial and appeal, with our docket no. 6211, Orville Coon v. Viking Explorations, Inc., 353 So.2d 747, Coon's workmen's compensation suit against his employer, in which a separate opinion has been rendered this date.
The accident occurred when plaintiff fell from a steel ladder of steps affixed to a tank battery. Blaney sold and delivered the tank battery to Viking. Coon contends that Blaney was negligent in assembling and erecting the ladder, because it was not securely braced or safely anchored to the ground. Blaney filed a third party demand against Viking to recover any amount for which Blaney might be cast, claiming that the accident resulted from Viking's fault in failing to properly maintain the ladder. Blaney has answered the appeal.
An exception of prescription has been previously overruled and the matter remanded for trial on the merits. Coon v. Blaney, 311 So.2d 622 (La.App. 3 Cir. 1975).
The trial court concluded, on the basis of ample evidence, that the ladder was unsafe, finding that either the ladder was not adequately braced or the ground underneath had washed away or both. Coon was found contributorily negligent for his failure to have the ladder repaired or stabilized or have another workman do it at Viking's expense. Coon's use of the ladder in its shaky condition was found to constitute fault on his part which was a cause of his fall.
The first issue on appeal is whether Coon's fault or contributory negligence bars his tort claim. If not, the second issue is whether Blaney is responsible in damages for the defective condition of the ladder. If the defect is attributable to Viking, plaintiff Coon's only recourse is workmen's compensation.
FACTS
Plaintiff Coon, born in 1909, is unable to read and write and has done hard labor for some 40 years. At the time of the accident, he was working as a switcher at Viking's Haley No. 1 Well in the West Catahoula field. He was first employed at this well in 1969, and the tank battery had been in place about two months prior to his employment. Coon's job involved going up the ladder on the side of the tank to gauge the amount of oil in the tank and to pour *746 chemicals in the tank to separate the water from the oil. Coon went up the ladder every day, although it was shaky. Coon said he had told Larry Litick of Viking about the defective condition two or three months before the accident. Litick had to give him telephone permission from Viking's Fort Worth offices for any work done on the well. On some occasions, Litick's secretary would authorize the work when Litick was not there. Coon sent a report to Viking once a month, which he signed but did not write and could not read. Coon fell when the bottom of the ladder slipped forward causing him to hit the iron steps and break his left kneecap. The bottom was resting on the ground. There was no base plate. Coon said there was only one brace when it was first put up; he did not think it was properly braced. He admitted that there had been several different contractors working on the well after Blaney.
After the accident occurred, Coon got Kay Lease Service to come out and brace the steps at the bottom but testified that he would have had to pay for it if he had had it fixed beforehand. Coon once ordered two drums of gas to wash down the tanks and sent the bill to Litick for payment by Viking. Viking deducted the charge from his check, on the ground that Coon had not been authorized to buy the gas.
Gerald Prewitt, a welder, testified that he was ordered by Kay Lease Service to go out and brace the catwalk and ladder on the tank. Prewitt found the stairs and catwalk shaky and rickety but not dangerous. He did not think it would have been possible for the bottom to kick out. Coon was present and told Prewitt about his accident but not how it happened. Prewitt testified that the tank battery assembly, including the ladder and catwalk, were factory built and appeared secondhand. He said they probably were, since these items are usually transported from one location to another. Prewitt's opinion was that lack of proper maintenance caused the ladder and catwalk to shake, specifically failure to tighten up the braces and bolts. The nuts and the handrailing on the catwalk were loose.
Paul Montgomery testified as an expert in the field of petroleum engineering that the tank battery stairs were not properly constructed because there was no ground level support in the form of a base plate at the time of the accident. The pipe welded at the bottom after the accident improved their safety. It resulted in no sway on the stairs but about an inch of deflection or downward movement. Montgomery could not estimate what the sway or deflection was on the day of the accident prior to the installation of the base plate. When he examined the base after the accident it was buried in the ground about two inches. The equipment appeared old. According to Montgomery, the stairs could have kicked out at the bottom and caused Coon's fall. Montgomery testified that the maintenance of the battery was average. There was some rust and he observed a couple of bolts missing at the top of the stairs, but did not feel that lack of maintenance contributed to the instability of the stairs.
William S. Blaney, Jr. testified that he sold the tank battery equipment July 16, 1969. He had purchased it from Siesta Oil Explorations Company and then sold it after Vernon Bottom had examined it and said it was suitable for the Omnibus lease where Coon was later employed by Viking. Blaney sold the equipment for $2600 and charged by the hour for hooking it up. He said he would have put a concrete pad under the steps if Coon had asked for it, since Coon was representing Omnibus while Blaney was doing the work and signed Blaney's work tickets. Four of Blaney's invoices to Omnibus Operating Company in October of 1969, signed by Orville Coon, are in evidence. Blaney's last work on the site was in December of 1969. He did not construct the equipment but transferred it from the other well site to the accident site exactly as it was, leaving nothing. Blaney testified that the base plate had been cut off the stairs after he moved them and that the metal plate was attached to the base of the ladder when it was moved.
CONCLUSION
I. An employee, whose employment requires certain acts is not negligent *747 in performing them despite knowledge of a hazard being involved. See O'Keefe v. Warner, 288 So.2d 911 (La.App. 1 Cir. 1974), writ denied La., 293 So.2d 170, where an employee suing in tort was held to be free of negligence because the duties of his job did not give him a safe alternative. Had Coon refused to climb the ladder, he might have suffered loss of his job. He could reasonably have feared this consequence. Coon was not contributorily negligent and did not assume the risk of the ladder's unsafe condition. The trial court's conclusion to the contrary is manifestly erroneous.
II. There was testimony that the condition of the ladder was the result of improper maintenance, and other testimony that the stairs or ladder were inherently unsafe in their construction. However, Blaney was not the manufacturer of the stairs or even the first vendor. Thus, strict liability for manufacture of a product unreasonably dangerous for normal use, as enunciated in Weber v. Fidelity & Casualty Insurance Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971), is not applicable. Blaney is also not a "professional vendor", as that term is used in Justice Barham's concurring opinion denying a writ at 309 So.2d 343 (La., 1975) in Peltier v. Seabird Industries, Inc., 304 So.2d 695 (La.App. 3 Cir. 1975). See Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La., 1974), where Reliable Motors, Inc., a retailer in good faith, which sold a used truck, was held not liable for injuries caused by the later explosion of one of the truck's wheels. According to Blaney, the tank battery assembly which he proposed to buy and sell was examined by Vernon Bottom on behalf of the buyer and approved for purchase. Blaney then did the hookup at the new site and was paid for this on an hourly basis. Blaney cannot be held responsible for apparent defects, known to the purchaser, even if they in fact existed at the time of sale (which is not free of doubt) and caused Coon's injury some five years later. The evidence as a whole establishes that the accident resulted from the fault of Coon's employer, either in buying secondhand and defective equipment, or in failing to have it repaired and maintained. Plaintiff Coon is therefore restricted to recovery in workmen's compensation.
For the foregoing reasons, the judgment of the trial court herein dismissing plaintiff's suit is affirmed. All costs are assessed against plaintiff-appellant, Orville Coon.
AFFIRMED.
DOMENGEAUX, J., concurs in the result.