355 So.2d 1345 (1978)
John Edward BILLEDEAUX, Plaintiff-Appellant,
v.
O. J. ADAMS, Defendant-Appellee.
No. 6288.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1978.
Rehearings Denied March 29, 1978.
Writ Granted May 12, 1978.
Writ Refused May 12, 1978.
*1346 Baggett, McCall, Singleton and Ranier by Homer C. Singleton, Jr., Lake Charles, for plaintiff-appellant.
Woodley & Fenet by Robert W. Fenet, Lake Charles, for defendant-appellee.
Don L. Broussard, Lafayette, for intervenor-appellee.
Before GUIDRY, FORET and JOHNSON, JJ.
FORET, Judge.
This is a suit for damages instituted by John Edward Billedeaux, plaintiff-appellant herein, against O. J. Adams, officer and manager of Marks Automotive Discount Center, Inc., and Charter Oaks Fire Insurance Company, liability insurer of Adams. The subject of the suit is for personal injuries, etc. sustained as a result of an alleged accident occurring on or about April 10, 1976.
Travelers Insurance Company, the workmen's compensation insurer of Marks Automotive *1347 Discount Center, Inc., intervened in the suit for workmen's compensation benefits paid to Billedeaux.
The trial court found the defendant negligent, but found the plaintiff to be contributorily negligent, and therefore dismissed plaintiff's suit. However, no disposition of Travelers' intervention was made by the trial court judgment. Travelers has not joined plaintiff in this appeal.
On appeal, O. J. Adams and Charter Oaks Fire Insurance Company filed a peremptory exception of no cause or right of action, asserting that Act No. 147 of 1976, amending the Louisiana Workmen's Compensation Act, to provide that an employee cannot maintain suit for damages against his employer, or any principal officer, etc., is remedial legislation which should be given retroactive effect. We find no merit in this contention of defendants. They rely on the case of Barr v. Preskitt, M.D.Ala., E.D., 389 F.Supp. 496 (1975), which was cited by the 24th Judicial District Court, State of Louisiana, in a case entitled Green v. Liberty Mutual Insurance Company, et als., to extend retroactive effect to Act 147. However, the Fourth Circuit Court of Appeal, in reviewing the Green case decided by the Twenty-Fourth Judicial District Court, reversed the holding of the district court, refusing to follow Barr v. Preskitt, supra, and held that Act 147 was not remedial or procedural, and did not have retroactive effect, but in fact was applicable only from the effective date of the act, and subsequent thereto. Green v. Liberty Mutual Insurance Company et al., 352 So.2d 366 (La.App. 4 Cir. 1977) (Docket Number 9025 of the Fourth Circuit). We fully agree with the Fourth Circuit holding in Green, for the reasons stated therein.
The trial court found the defendant, O. J. Adams, to be negligent in maintaining a dangerous place for plaintiff to work in, but found that the plaintiff was contributorily negligent. Neither plaintiff-appellant nor defendant-appellees contest the factual findings of the trial court. We agree with these findings of the trial court, and quote therefrom:
"On April 10, 1976, the plaintiff was employed by Marks Automotive Discount Center, Inc., of which Mr. Adams was the president and principal stockholder, to repair and replace exhaust systems on cars and trucks. He has alleged that while coming out of a pit designed for that purpose "a step on the stairs . . . had broken or come loose and slipped, thereby causing petitioner to fall." Although there is a serious dispute as to whether a board on the step moved, it is clear from the evidence that on that day the plaintiff suffered an injury to his left knee while leaving the pit.
. . . . .
"None of the plaintiff's fellow employees [who] went up and down the steps on the day of his injury noticed any of the boards which made up the steps or treads being loose or moving. However, the stairs were old and crudely constructed, and it was common knowledge among the employees that the nails in the treads worked loose simply through use. Thus, it became necessary to re-nail and replace boards on the stairs from time to time. Generally, this was done by Douglas Day, an old employee who made most of the repairs that were needed on the premises. However, boards were also re-nailed and replaced by other employees [who] worked in the pit, except possibly the plaintiff.
"Gary J. Gaudin was the manager in charge of the muffler replacements and automotive parts shop, including the pit, while O. J. Adams spent most of his time in connection with the trailer sales. This was not a very large business establishment and Mr. Adams also went into the pit on occasion, sometimes several times a week. Both Gaudin and Adams testified that if they became aware of anything being wrong with the steps they would see that it was repaired by Day or another employee. The materials and tools necessary for this purpose were generally kept on the premises.
"Although the matter is not entirely free of doubt, the court concludes the *1348 plaintiff has established by a preponderance of the evidence that he twisted his knee because of a loose board on the top wooden step as he was coming out of the pit on April 10, 1976.
"The court further concludes that the responsibility for furnishing the plaintiff a safe place to work rested on O. J. Adams under the circumstances presented, and that he and his insurer are liable to the plaintiff for his damages unless the latter is barred from recovery by reason of his contributory negligence.
"As stated above, it was common knowledge that the boards on the stairs became loose from time to time and certainly the plaintiff was aware of this. The court is also convinced that the boards on the treads did not become detached suddenly. Instead, they loosened gradually over a period of time as the employees stepped on them in going in and out of the pit many times each day. It is therefore clear that if the plaintiff's knee injury was caused by the movement of a loose board on the top step, as the court has so concluded, the board was loose and moving each time the plaintiff went up and down the stairs that morning and probably before. Thus, the danger was open and obvious and one of which the plaintiff was or should have been aware."
We agree with the trial court that the steps descending from the main floor of the shop into the pit were dangerous, being old, dilapidated, and without benefit of hand railings to assist persons ascending or descending thereon.
The other issue remaining is whether or not plaintiff-appellant was contributorily negligent and/or assumed the risk of the harm which ultimately resulted in his injury.
We disagree with the trial court in its holding that plaintiff-appellant was contributorily negligent.
For an employee to be held contributorily negligent and/or to have assumed the risk of the harm which ultimately resulted in his injury, the defendant must prove, by a preponderance of the evidence, that the plaintiff voluntarily and knowingly exposed himself to the danger which resulted in his injury. That determination requires a dual finding of (1) a known and obvious danger and (2) a readily available reasonable alternative. Coon v. Blaney, 353 So.2d 744 (No. 6210, La.App. 3 Cir. 1977); Pearson v. Hartford Acc. and Indem. Co., 345 So.2d 123 (La.App. 1 Cir. 1977), writ refused 347 So.2d 255, 256; Coco v. Winston Industries, Inc., 330 So.2d 649 (La.App. 3 Cir. 1976), reversed on other grounds, 341 So.2d 332, and cases cited therein.
Coco v. Winston Industries, Inc., supra, stated at page 662, ending on 663:
"The law is well settled that a workman is not to be held contributorily negligent because he does work assigned to him under dangerous conditions for which his employer is responsible and at which assignment he must work or suffer dismissal.
In O'Keefe v. Warner, 288 So.2d 911 (La.App., 1st Ct. 1974) it was said:
"We conclude, as apparently did the jury, that the appellants failed to prove contributory negligence or assumption of the risk on the part of O'Keefe. The duties of his work required him to be where he was, and he was doing his best to discharge those duties.
We agree with the observation by Judge Redmann of the 4th Circuit in a somewhat similar situation:
'. . . a workman's superior cannot create or permit danger and send the workman into it with a warning and escape liability on a theory that the workman was contributorily negligent merely by going into the danger. The workman's only other alternatives are to try to tell his superior how to run the job, or to quit.' Chaney v. Brupbacher, 242 So.2d 627, at 631 (La.App. 4 Cir. 1970)." (Citations omitted.)
The trial court herein made a finding that the risk of harm from ascending, or descending from, the steps located in the muffler pits were known and obvious to plaintiff *1349 Billedeaux. The plaintiff himself testified that the steps were loose and wobbly, and at times, moved. With that ruling we do not disagree. However, it also made a finding that a reasonable alternative existed, stating:
". . . The testimony in this regard contains no indication that the plaintiff would have lost his job had he re-nailed the loose board himself, or requested that it be done." (Tr., pg. 203)
With that finding as to a "reasonable alternative", we cannot agree.
We believe that by the term "a readily available reasonable alternative" is meant that another option was open to the employee: he could have worked elsewhere, at a place which was both safe and free of any risk of harm. As regards an alternate means of access to the muffler pits, none existed or was furnished. There was no other means of ingress into and egress from, the muffler pits other than the steps upon which plaintiff Billedeaux fell.
The employer must inspect and maintain the working premises in a safe and workman-like condition. Coon v. Blaney, supra; Pearson v. Hartford Acc. & Indem. Co., supra; Coco v. Winston Industries, Inc., supra; Galloway v. Employers Mutual of Wausau, 286 So.2d 676 (La.App. 4 Cir. 1973), writ refused 290 So.2d 333; Hall v. Hartford Acc. & Indem. Co., 278 So.2d 795 (La.App. 4 Cir. 1973), writ refused 281 So.2d 753; cases too numerous to cite. The employees, whose very jobs place them at those places in which they work, are not required to undertake that responsibility. That responsibility may be delegated to executive officers and personnel in charge of, and who oversee, the work of the non-executive employees. It cannot, however, be imposed upon those employees to whom that very same responsibility (duty) is owed by the employer.
For the above reasons, we reverse.

QUANTUM
In his petition, Billedeaux claimed damages for past and future medical expenses. No evidence was introduced as to future medical expenses, and therefore no award can be made therefor.
It was stipulated at trial that Travelers Insurance Company, intervenor, had paid past medical expenses totalling $3,471.52.
However, the trial court judgment dismissing plaintiff's suit made no mention of the intervention by Travelers. Therefore, the intervention is still viable. An intervention does not fall with the main demand. C.C.P. Art. 1039, Wright v. Mark C. Smith & Sons, 283 So.2d 85 (La.1973). The implication of Wright is that a separate or consolidated judgment must be rendered disposing of the intervention.
We have allowed plaintiffs in tort suits to recover medical expenses, even though these expenses have been paid by a workmen's compensation insurance carrier. However, we have done so only where there was no claim for reimbursement made by the payer of such expenses, by way of intervention or otherwise. Richoux v. Grain Dealers Mutual Insurance Co., 175 So.2d 883 (La.App. 3 Cir. 1965) and cases cited therein at page 892.
Inasmuch as Travelers has intervened for compensation benefits paid, including medical expenses, and that intervention is still viable in the trial court, we cannot grant judgment to Billedeaux for these medical expenses.
Mr. Billedeaux's injury was diagnosed as a tear of the medial meniscus of the left knee which was surgically repaired on April 28, 1976. He had the usual postoperative convalescence, and on June 15, 1976, the doctor recommended that he try to return to work. On July 29, 1976, Dr. Drez, who had operated on plaintiff's knee, found the knee to be stable. Although he felt plaintiff would have some non-disabling pain, Dr. Drez was of the opinion that plaintiff could resume his normal work. Plaintiff returned to Dr. Drez's office on December 30, complaining of the leg, but the doctor found no reason therefor. He did assign a 5% permanent partial disability of the leg, which would not prevent the *1350 plaintiff from resuming his normal activities, even though some discomfort might be experienced on weather changes or extreme exertion. Dr. Edmond C. Campbell examined plaintiff on October 26, 1976, and while concluding that plaintiff was able to resume his previous work at that time, the doctor felt that plaintiff had a permanent partial impairment of approximately 15% of the left lower extremity as a result of his injury and the surgery.
We are of the opinion that plaintiff is entitled to an award of Seven Thousand Five Hundred ($7,500) Dollars for the general damages which he suffered as a result of this accident.
In accordance with the above, the judgment of the trial court is hereby reversed, and judgment is rendered in favor of the plaintiff, John Edward Billedeaux and against defendants, O. J. Adams and Charter Oaks Fire Insurance Company, jointly, severally, and in solido, in the amount of SEVEN THOUSAND FIVE HUNDRED ($7,500.00) DOLLARS, with legal interest thereon from date of judicial demand, and for all costs of these proceedings in both the trial court and this Court.
REVERSED AND RENDERED.