Larry D. ARNOLD, Plaintiff-Appellant,

v.

UNION OIL COMPANY OF CALIFOR-
NIA et al., Defendants-Appellees.

No. 77–2223.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1979.

Rehearing Denied Jan. 11, 1980.

Edward James Gaidry, Houma, La., for plaintiff-appellant.

A. R. Christovich, Jr., W. K. Christovich, New Orleans, La., for defendants-appellees.

Before GODBOLD, Circuit Judge, SKELTON,* Senior Judge, and RUBIN, Circuit Judge.

GODBOLD, Circuit Judge:

Plaintiff Arnold was injured in an explosion and fire on a drilling platform off the Louisiana coast. Union Oil hired Arnold's employer, Hydraulic Workover, Inc., to clean out a clogged well. As part of the job natural gas under pressure was brought in by hose from another well close by and its pressure used to force liquid out of the formerly clogged well, a technique known as "gas lifting." Arnold had been employed by Hydraulic Workover for approximately two months. He was a class "C" worker, the lowest experience rating for a Hydraulic Workover employee. He had never before participated in a gas lift operation.

The rubber hose used to carry the pressurized gas from one well to the other burst, the escaping gas caught fire, and Arnold was injured. He brought this diversity suit against Union.

The district judge gave a directed verdict for Arnold on Union's defense of contributory negligence but denied Arnold's motion for a directed verdict on the defense of assumption of risk. The case was submitted to the jury on special interrogatories. It found that Union was negligent and had violated government regulations, and that these failures of due care were a proximate cause of Arnold's injury. But it also found that Arnold had assumed the risk. Arnold's motions for judgment n. o. v. and new trial were denied. Our review is under *Boeing Co. v. Shipman*, 411 F.2d 365 (CA5, 1969) (en banc),[1] applied in the light of Louisiana law of assumption of risk.

While pressurized gas was moving from one well to the other through the hose Arnold observed bubbles or blisters forming on the hose. Broussard, Union's production supervisor for the oil field (including this particular platform), was on the platform and exercised some degree of supervision over the gas lifting operation.[2] It is undisputed that the following events happened. Arnold was apprehensive or even frightened by the bubbles, fearing that the hose might rupture and bring about a fire or an explosion. He and his co-worker, Lee, shut off the flow of pressurized gas and set about to get a larger and stronger hose to replace the one in use. Broussard heard a popping noise "like you would slap your hands together real loud," went to the wellhead of one of the wells, saw bubbles on the hose, and observed that at least one bubble had burst and caused a split in the outside layer of the hose. Arnold and Lee told Broussard they were concerned about the hose. Broussard told them that it was normal for bubbles to form on a hose and for the bubbles to burst, that they should not be concerned, that he saw no need to change the hose, and that the bubbles did not affect the integrity of the hose. He instructed them to go ahead and use the hose and to resume the gas lifting operation using the same hose. They complied.[3]

* Senior Judge of the United States Court of Claims, sitting by designation.

1. On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
   411 F.2d at 374.

2. Q Let's talk about your authority on the platform. If HWI men were doing something wrong, something you didn't like, did you have the authority to stop them from doing that?
   A [Broussard]: Yes.
   Q As a supervisor you could do that?
   A Yes.

3. There is testimony that on two different occasions Arnold and Lee shut off the pressure and set about to replace the hose, that both times Broussard told them not to replace the hose and to start the gas lift again, and that Brous-

Broussard made no inquiry about the experience of the Hydraulic Workover crew in gas lift operations. He asked no questions concerning the capacity of the rubber hose.

A few minutes after Arnold and Lee turned the pressure on again pursuant to Broussard's instructions, Broussard left the platform. Soon thereafter the hose burst and the explosion and fire ensued.

Union does not question the jury's findings that it was negligent and that it violated government regulations.

■ Louisiana recognizes assumption of risk as an affirmative defense to tort liability. *Langlois v. Allied Chemical Corp.*, 249 So.2d 133 (La.1971); La.Code Civ.P. art. 1005. The burden is on the defendant to establish assumption of risk by a preponderance of the evidence. *Langlois*, 249 So.2d at 141; *McInnis v. Fireman's Fund Insurance Co.*, 322 So.2d 155, 157 (La.1975).

■ In the absence of an express agreement to assume the risk (none is claimed here) assumption of risk may still be found

> where the nature of the relationship of the parties appears to exact consent from the one injured to be exposed to possible harm.

*Langlois*, 249 So.2d at 140. Thus while one who knowledgeably incurs a risk is deemed to have assumed it despite the lack of express consent, the basis for the rule is that the situation implies a tacit manifestation of consent. *Id.; Laney v. Stubbs*, 217 So.2d 468, 474 (La.App.1968), *aff'd on other grounds*, 229 So.2d 708 (La.1969); *Pollard v. Roberts*, 306 So.2d 801, 805 (La.App.1975); *Mitchell v. Hepinstall Steel Co.*, 264 So.2d 325, 327 (La.App.), *writ denied*, 266 So.2d 447 (La.1972); W. Prosser, The Law of Torts 445–46 (4th ed. 1971). Louisiana cases stress that assumption of risk is a subjective inquiry, involving the state of mind of the plaintiff. *Langlois*, 249 So.2d at 141; *Prestenbach v. Sentry Insurance*

*Co.*, 340 So.2d 1331, 1335 (La.1976). Knowledge by the plaintiff of the underlying facts is not enough; he must also "understand and appreciate the risk involved." *McInnis*, 322 So.2d at 157; *Langlois*, 249 So.2d at 141.

■ The jury in this case could find that Arnold both knew and appreciated the risk. Indeed, from hindsight, it is clear that at least initially he appreciated it much better than did Broussard. But Louisiana also requires that plaintiff's assumption of risk be voluntary. This accords with the Restatement of Torts, Second, § 496E(1): "A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk." In some cases Louisiana has approached voluntariness in the context that a plaintiff does not assume the risk where he surrenders to the superior experience of others and to the authority of those in charge of the work. In *Mitchell v. Hepinstall Steel Co., supra*, plaintiff in a job he had held for three weeks, had been assigned for the first time to assist in unloading a truckload of steel. The driver, an experienced employee of the trucking company making the delivery to plaintiff's employer, unloaded the bundles of steel by attaching the winch clip to the metal bands that held the bundles together. The plaintiff told the driver this method was improper but yielded to the driver's insistence that he had done it many times before. Plaintiff's supervisor also objected and also yielded to the driver's insistence, warning plaintiff to "stay clear." In affirming a judgment for plaintiff, the court held:

> We do not believe that this is a proper case for application of assumption of risk. The basis of the defense is the express or implied consent of the injured person to relieve the negligent party of his obligation of reasonable care toward him. The consent to assume the risk must be made with full knowledge and understanding of the consequences, and that consent must be completely free and voluntary. All of the facts and circumstances sur-

---

sard's examination of the blisters occurred with respect to the second incident. Whether there were one or two incidents, Broussard acknowledged the facts we have set out in the text.

Arnold and Lee testified that Broussard took his knife and popped one of the blisters. Broussard could not recall whether he did or did not do this.

rounding the implied consent must be considered in determining the applicability of the defense.

Mitchell was employed to perform manual labor, and he did as he was told instinctively and without question. While he admitted in response to questions upon cross-examination that he was aware of the danger involved, we are convinced that after reviewing all of the testimony that he did not willingly, freely and knowingly choose to relieve the truck driver of the obligation of safe conduct toward him. He simply surrendered his better judgment in reliance on the superior work experience of the other two persons and in subjection to the authority of the person in charge of the unloading operation.

264 So.2d at 327. Other cases reach the same result but in terms of plaintiff's having no readily available reasonable alternative to doing what he did. This accords with Comment c to § 496E of the Restatement:

c. The plaintiff's acceptance of the risk is not to be regarded as voluntary where the defendant's tortious conduct has forced upon him a choice of courses of conduct, which leaves him no reasonable alternative to taking his chances. A defendant who, by his own wrong, has compelled the plaintiff to choose between two evils cannot be permitted to say that the plaintiff is barred from recovery because he has made the choice. Therefore, where the defendant is under a duty to the plaintiff, and his breach of duty compels the plaintiff to encounter the particular risk in order to avert other harm to himself, his acceptance of the risk is not voluntary, and he is not barred from recovery. The same is true where the plaintiff is forced to make such a choice in order to avert harm to a third person. It is true likewise where the plaintiff is compelled to accept the risk in order to exercise or protect a right or privilege, of which the defendant has no privilege to deprive him. The existence of an alternative course of conduct which would avert the harm, or protect the right or

privilege, does not make the plaintiff's choice voluntary, if the alternative is one which he can not reasonably be required to accept.

Often the concept of available alternative is discussed interchangeably with respect to both contributory negligence and assumption of risk. In *Billedeaux v. Adams*, 355 So.2d 1345 (La.App.1978), *remanded on other grounds*, 358 So.2d 640 (La.), *on remand*, 360 So.2d 637 (La.App.1978), a contributory negligence case, the court said:

For an employee to be held contributorily negligent and/or to have assumed the risk of the harm which ultimately resulted in his injury, the defendant must prove, by a preponderance of the evidence, that the plaintiff voluntarily and knowingly exposed himself to the danger which resulted in his injury. That determination requires a *dual* finding of (1) a known and obvious danger *and* (2) a readily available reasonable alternative. *Coon v. Blaney*, 353 So.2d 744 (No. 6210, La.App. 3 Cir. 1977); *Pearson v. Hartford Acc. and Indem. Co.*, 345 So.2d 123 (La. App. 1 Cir. 1977), writ refused 347 So.2d 255, 256; *Coco v. Winston Industries, Inc.*, 330 So.2d 649 (La.App. 3 Cir. 1976), reversed on other grounds, 341 So.2d 332, and cases cited therein.

*Id.* at 1348. In *Billedeaux* plaintiff, who worked in a pit in the floor of a garage, was injured from a rickety and dilapidated ladder, the only way in and out of the pit. Repairs to the ladder ordinarily were made by another employee. The trial court denied recovery on the ground plaintiff had the reasonable alternative of repairing the ladder himself or asking that it be done. The Court of Appeals reversed holding:

We believe that by the term "a readily available reasonable alternative" is meant that another option was open to the employee: he could have worked elsewhere, at a place which was both safe and free of any risk of harm. As regards an alternate means of access to the muffler pits, none existed or was furnished. There was no other means of ingress into and egress from, the muffler pits other

than the steps upon which plaintiff Billedeaux fell.

The employer must inspect and maintain the working premises in a safe and workman-like condition.

\* \* \* \* \* \*

The employees, whose very jobs place them at those places in which they work, are not required to undertake that responsibility. That responsibility may be delegated to executive officers and personnel in charge of, and who oversee, the work of the nonexecutive employees. It cannot, however, be imposed upon those employees to whom that very same responsibility (duty) is *owed* by the employer.

355 So.2d at 1349 (citations omitted). *See also: Boure v. New Orleans Public Service, Inc.*, 255 So.2d 776 (La.App.) *writ denied*, 260 La. 857, 257 So.2d 432 (1972) (painter assigned to paint near electric wires could not be denied recovery even if he knew of the lines, because he had no reasonable alternative); *Coon v. Blaney*, 353 So.2d 744 (La.App.1978) (employee required to use a defective ladder reported the defect, but it was not corrected, held not contributorily negligent because no reasonable alternative to using the ladder). *Compare Pearson v. Hartford Acc. & Indem. Co.*, 345 So.2d 123 (La.App.1977) *writ denied*, 347 So.2d 255 (La.1977) (obvious and known danger in cleaning moving fan, plaintiff barred because he had reasonable alternative of waiting until the fan stopped and was immobilized).

The present case follows *a fortiori* from this line of Louisiana authority. Arnold was an inexperienced employee, at the bottom of the pecking order and engaged in work not familiar to him. He attempted to remedy a condition that he saw and that, based on his limited experience, he considered dangerous. Union's supervisor told Arnold there was no danger, directed him to discontinue the corrective measures Arnold already had undertaken, and instructed him to start the work again using the equipment that Arnold had warned against. Arnold thus surrendered to the superior experience and authority of Broussard. *See Mitchell v. Hepinstall Steel Co., supra.*

■ Union argues that Arnold was subject to the orders of his crew foreman (a Hydraulic Workover employee), and, inferentially, that Broussard either had no authority to give orders to Arnold or, if he had authority, Arnold was not bound to obey him. The record does not support the argument. Broussard was in a position of authority, he purported to exercise that authority by giving instruction with respect to the gas lift, and Arnold and his crew chief obeyed them. In addition, Arnold had no readily available reasonable alternative. Broussard had cut him off from a safer way of continuing the job. Also, because of the nature of Arnold's job assignment there was no place for him to find safety. He and Lee were required to stay with the hose. Union argues that Arnold should have refused to work and shut down the job. Assuming this was an available alternative and Arnold knew it was available, under Louisiana law it was not a reasonable alternative for him. *See Billedeaux, supra,* and cases cited therein.

■ Whether phrased in terms of surrender to superior authority, or lack of an available alternative, Arnold's actions were not voluntary, and therefore as a matter of law, not assumption of risk.[4]

---

4. In language often quoted the Louisiana Court of Appeals has said:

[A] workman's superior cannot create or permit danger and send the workman into it with a warning and escape liability on a theory that the workman was contributorily negligent merely by going into the danger. The workman's only other alternatives are to try to tell his superior how to run the job, or to quit.

*Chaney v. Brupbacher*, 242 So.2d 627, 631 (La. App.1970), quoted in *O'Keefe v. Warner*, 288 So.2d 911 (La.App.1974) and in *Billedeaux.* Union did much more than that here. It sent Arnold to do his work in a place of danger after it received a warning from Arnold and after he had begun corrective action, told him the warning was unnecessary, and instructed him to stop the remedial action.

Arnold's motion for a directed verdict on the assumption of risk defense should have been granted. Since the jury's other answers are unaffected by our decision, its findings of negligence and violation of regulations and of proximate causation establish the liability of Union for Arnold's injuries. The case is therefore remanded for a trial on Arnold's damages.

REVERSED and REMANDED.