**Jim Dale HULL, Plaintiff-Appellant,**

v.

**MERCK & COMPANY, INC., Defendant-Appellee.**

No. 84–8340.

United States Court of Appeals, Eleventh Circuit.

April 25, 1985.

See also 576 F.Supp. 616.

---

Charles B. Tanksley, Atlanta, Ga., for plaintiff-appellant.

Palmer H. Ansley, John H. Stanford, Jr., William R. Johnson, Atlanta, Ga., for defendant-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, and NICHOLS[*], Senior Circuit Judge.

PER CURIAM:

In this diversity case applying Georgia law, Jim Dale Hull appeals from a jury verdict for the appellee, Merck & Company, Inc. (Merck), in the United States District Court for the Northern District of Georgia. Finding no error in the trial of the case, we affirm.

Merck operates three adjacent chemical plants in Albany, Georgia. Waste chemicals are expelled via three fiberglass sewer pipes which meet at a large junction before emptying into a one-million-gallon neutralizing pool. In 1980, Merck determined that the waste lines needed replacement. It solicited bids from four companies specializing in such work, including Augusta Fiberglass Coatings (AFC), the appellant's employer. Merck cautioned the bidders that Merck planned to operate the factories throughout the replacement activity, and that bypass pipes and various types of safety equipment would be necessary to the work. Before bidding, AFC also inspected the job site. AFC's bid was accepted and Hull commenced supervision of the job on September 4, 1980.

AFC relayed Merck's cautionary instructions to its employees and provided AFC workers, as required by Merck, with rubber boots, pants, coats and gloves, as well as goggles and masks. Hull, who had long experience working with chemicals, initially wore some of the equipment but after a few days ceased this practice. Many of Hull's coworkers used the safety equipment extensively. At an October 17, 1984

---

[*] Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

employee meeting, AFC noted a lack of full compliance and reminded the employees of the necessity of wearing the protective gear.

Although the evidence was conflicting, it appears that Hull spent about four hours each day in the trench which was dug to expose the pipelines. He regularly breathed gases and allowed liquid to spill on his clothing and body. Hull noted at the time that the chemical fumes in and around the pipes were a health hazard. His most severe exposure occurred on September 22, 1980. On that morning, Hull stuck his head inside the 20-inch pipe connecting lines 1 and 2 to line 3. The pipes were supposed to carry only a two percent solution of waste, but because of an accidental spill in the factories, the pipe contained at that moment an 80 to 85 percent solution of toluene. Hull became dizzy and nauseous. As a result, he received oxygen at the plant infirmary.

Within a year after the completion of the Merck contract, Hull suffered bone marrow depression, followed by leukemia. He sued Merck for $2,500,000.00 plus punitive damages, alleging (1) that Merck had negligently failed to disclose the nature and health dangers of the waste chemicals carried by the pipelines; (2) that Merck had negligently failed to inform him adequately of the necessity for wearing the various types of protective gear during construction; (3) that the intermittent discharge without warning of high-concentration spills into the pipelines resulted from the negligent operation of the factories; and (4) that Merck's decision to continue plant operations and consequently the flow of waste chemicals during the pipelines replacement project amounted to negligence. The jury trial commenced on January 23, 1984 and resulted in a verdict for Merck.

*Assumption of the Risk*

The trial judge instructed the jury on Georgia's comparative fault law and Hull's four charges of negligence, reminding the jury that Hull could recover by prevailing on at least one allegation of negligence. At Merck's request, and over Hull's objection, the court also charged:

> Now, ladies and gentlemen of the jury, when a person knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking such risk in and of itself amounts to a failure to exercise ordinary care and diligence for his own safety, he cannot hold another liable for injuries proximately caused by such action even though the injuries may be partly attributable to the negligence of such other person.

R.Vol. 5 p. 81. Hull claims that this instruction was not warranted by the evidence. *E.g., Rohner, Gehring & Co. v. Capital City Bank*, 655 F.2d 571, 577 (5th Cir. Unit B 1981). *See Lyle v. Bentley*, 406 F.2d 325, 327 (5th Cir.1969). "[T]he quantity and quality of proof necessary to make out a case for submission to a jury in a federal court are determined by federal law." *Johnson v. Buckley*, 317 F.2d 644, 646 (5th Cir.1963). *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1323–24 (11th Cir.1982).

Under Georgia law, a plaintiff assumes the risk when he "deliberately [chooses] an obviously perilous course of conduct and fully appreciate[s] the danger involved." *Owens-Illinois, Inc. v. Bryson*, 138 Ga.App. 78, 79, 225 S.E.2d 475, 476 (1976).[1] The plaintiff must do so voluntarily, "without restriction from his freedom of choice either by the circumstances or by coercion...." *Myers v. Boleman*, 151 Ga. App. 506, 509, 260 S.E.2d 359 (1979); *Whitehead v. Seymour*, 120 Ga.App. 25,

---

1. Georgia law does not require that the assumption be negligent in order to bar plaintiff's recovery. Even the most reasonable assumption of the risk bars recovery. *E.g., Roberts v. King*, 102 Ga.App. 518, 521–22, 116 S.E.2d 885 (1960) (explaining the distinction between assumption of the risk and plaintiff's negligence). To the extent that the trial court's charge included plaintiff's negligence as an element of the assumption of risk doctrine, the court erred. This error could harm only Merck, however, and in view of our disposition of this case no remedy need be considered.

28, 169 S.E.2d 369 (1969). Georgia typically applies the doctrine of assumption of the risk to situations where the plaintiff races to beat a train at a crossing, drag races or walks onto a pond covered with thin ice. *Yandle v. Alexander,* 116 Ga.App. 165, 167, 156 S.E.2d 504 (1967). Although assumption of the risk presupposes awareness of the nature and extent of the threat posed, perfect knowledge is not necessary. *See McCrimmons v. Cornell-Young Co.,* 171 Ga.App. 561, 320 S.E.2d 398 (1984). But Georgia law offers little guidance as to the depth of knowledge a plaintiff must possess to assume the sometimes very subtle risks posed by chemical exposure.[2]

■ There was ample evidence to justify delivery of the charge in this case, especially as it pertained to Hull's allegation that Merck negligently decided to operate the factories during the replacement of the pipelines. Hull knew before he ever entered the plant grounds that Merck and AFC planned for operations to continue, with waste chemicals to be expelled via a bypass system of hoses assembled by AFC workers. Although Hull might or might not have had knowledge of any specific carcinogenic risk posed by toluene, he knew from long experience that the handling of waste chemicals warranted protective measures, and that coping with a continued flow of waste warranted an even greater degree of caution. He also knew Merck and AFC were supplying adequate safety gear, which he used only for the first few days, but which many of his co-workers wore throughout the project without hampering their work. The gear remained available for his use at all times. He testified that while he was working he concluded the fumes were dangerous to good health. Finally, his severe exposure on September 22, 1980, forcefully brought home the risk posed by Merck's operations, yet he voluntarily remained, exposing himself for another month or more. The evidence at the trial left the jury free to conclude that Hull's leukemia was caused by post-September 22nd exposure, and Hull's remaining after that date might be construed as a knowing assumption of all four of the risks arising from Merck's alleged negligence. In any case, there was more than enough evidence to warrant the jury finding that Hull assumed the risk posed by working around a continuing flow of waste chemicals during the replacement of the pipes. Viewing the instructions as a whole, we think the jury understood that Hull's assumption of one risk did not bar recovery for Merck's negligence on another ground.

*Evidence of Exposure to Benzene*

The waste pipelines contained trace amounts of benzene, a compound widely considered to pose risks of cancer. Before the trial, Hull deposed a medical expert, Dr. Cohen, who stated that Hull's disease was caused by benzene, toluene or both. On questioning by Merck's counsel, however, Dr. Cohen admitted that in reaching this conclusion he had made two assumptions: "one, that [Hull's] toxic exposure was significant.... And, two, that it caused his acute leukemia." Deposition of Dr. Cohen pp. 24–25.

■ The appellant now challenges the district court's exclusion of this deposition evidence at the trial. The district court was well within its discretion in excluding the evidence. *E.g., United States v. Lopez,* 543 F.2d 1156 (5th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566 (1977). Here, the assumptions made by Dr. Cohen rendered his seemingly firm opinion quite speculative, and the danger of irrelevance is clear. Such potentially confusing testimony is at odds with the purposes of expert testimony as envisioned in Fed.R. Evid. 702. The district court's decision was not "manifestly erroneous," 543 F.2d at

---

2. A few cases in other jurisdictions have confronted the issue of assuming chemical risks, but none are sufficiently analogous to this action. *E.g., Arnold v. Union Oil Co. of California,* 608 F.2d 575, 577–78 (5th Cir.1979) (Louisiana law); *Thomas v. Kaiser Agricultural Chemicals,* 81 Ill.2d 206, 40 Ill.Dec. 801, 407 N.E.2d 32, 36 (1980); *Armstrong v. Mailand,* 284 N.W.2d 343, 349 (Minn.1979). See Restatement of Torts, Second, § 496 A–E.

1158, especially considering that only parts of the deposition were excluded, and that Dr. Cohen was not barred from testifying before the jury and thereby subjecting himself to cross-examination.

■ Hull also contends the court erred in failing to instruct the jury as to whether benzene exposure caused Hull's leukemia. But Hull's own expert admitted at the trial that the concentrations of benzene to which Hull claimed to be exposed could not have precipitated the disease. There was no evidence to support submission of such an instruction to the jury, and the district court did not err in refusing to give the instruction.

## Merck's "Safety Guide for Visitors"

■ Merck distributes to visitors of its Albany plants a "Safety Guide for Visitors," designed to warn those who might be ignorant of chemicals and necessary protective measures. The district court permitted the appellant to read to the jury at length from the manual, but excluded the manual itself from evidence. The ruling was within the trial judge's broad discretion to exclude evidence that is irrelevant, confusing or misleading. *E.g., Hill v. Nelson,* 676 F.2d 1371 (11th Cir.1982). This court has upheld exclusion of a defendant's employee safety manuals, proffered by a plaintiff who worked for an independent contractor hired by the defendant, to prove the defendant's negligence. *Copeland v. Gulf Oil Corp.,* 672 F.2d 867 (11th Cir.1982). Here, the manual sought to be introduced was not even very good evidence of Merck's duty to its own employees, because the document was drawn up for the especial benefit of visitors. Evidence of the measures taken by an operator for the protection of visitors is hardly probative of the minimum duty Georgia law imposes on the plant operator with respect to an entirely different class of persons, its employees. Coupled with the danger that a jury might place undue emphasis on the contents of the manual if presented in printed form, these distinctions gave the district court good reason to exercise its discretion and permit only reading from the manual.

## Sequestration

Before the commencement of the trial, the district judge advised Hull's counsel that under Fed.R.Evid. 615 Hull must be sequestered unless he would be called as the first witness. Hull chose sequestration. Subsequently the trial judge realized that this ruling was in error because the sequestration rule did not apply to parties. The district judge then permitted Hull to return to the courtroom on the third day of trial. The court cautioned plaintiff's counsel, "If you want a mistrial, let's thrash that issue out now. I don't want to go through any more if you have a problem with it." After a recess, counsel replied, "Your honor, if I might let the record reflect that we have discussed this situation with our client and we are willing to proceed." R.Vol. 10 pp. 133–34. Upon this assurance, the court resumed the trial, which lasted for seven more days.

■ Hull now seeks a new trial as a remedy for this mistake, relying on *Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171 (3d Cir.1977), where a new trial was granted on account of a Rule 615(1) error. Even assuming *Varlack* to be the law of this circuit, the case is easily distinguished because there was no waiver of the exclusion of the party, as here. Moreover, Hull has not even suggested that he was prejudiced by his compelled absence from the courtroom.

The appellant's remaining claims of error are without merit.

The judgment of the district court is AFFIRMED.