400 So.2d 682 (1981)
Johnny Earl PARKER
v.
TRAVELERS INSURANCE COMPANY et al.
No. 11760.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1981.
Rehearing Denied July 13, 1981.
*683 Klein & Rouse, a Professional Law Corp., Henry L. Klein, New Orleans, for plaintiff-appellee.
Bienvenu, Foster, Ryan & O'Bannon, Hugh M. Glenn, Jr., New Orleans, for intervenor-appellee.
John J. Weigel and Madeleine Fischer, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants-appellants.
Before SAMUEL, KLIEBERT and BAILES, JJ.
KLIEBERT, Judge.
Plaintiff, Johnny Earl Parker (hereinafter Parker), was an operator at the Tenneco Oil Company Refinery (hereinafter Tenneco). He was injured while working at the refinery on March 24, 1976. Parker sued Tenneco, Travelers Insurance Company (hereafter TravelersTenneco's insurer), Charles Kilgore (hereafter Kilgorethe refinery's general manager), Charles Lambert (hereafter Lambertthe refinery's head of operations), Ray Brooks (hereafter Brookssupervisor of safety & security), Rawlin DeLaughter (hereafter DeLaughtersafety engineer), Al Thomas (hereafter Thomasacting foreman), and Linn Perriera (hereafter Perrieraforeman). Travelers also intervened as Tenneco's workmen's compensation carrier for the amounts paid to plaintiff under the workmen's compensation policy.
After a jury trial on the merits, judgment was rendered in the amount of $517,531.68[1] against Travelers, Kilgore, Brooks and Perriera, in solido. Additionally, there was judgment in favor of Travelers and against the plaintiff (Parker) for $29,429.08 as reimbursement for the workmen's compensation benefits paid by Travelers up to the time judgment was rendered. The suit was dismissed as to Lambert, DeLaughter and Thomas.
The facts leading up to the suit are as follows: On March 24, 1976, Parker, a 31 year old operator, was working the seven *684 A.M. to three P.M. shift at Tenneco's oil refinery in Chalmette. At approximately 7:30 A.M., pursuant to his job requirement, he went to check the gauges on the Fluid Catalytic Converter Unit (F.C.C. Unit). The gauges were mounted several feet above his eye level. In order to read the gauges, Parker walked up a "shop made" three tier steel step, read the gauges, then turned around on the top step and started walking down the steps. As he stepped off the last step onto the floor, his feet went out from under him. He landed on the steel steps, causing serious injury to his back. In November 1976, following conservative treatment, Parker was operated on for a ruptured disc. Subsequently, in October 1977, he had a total laminectomy and a fusion. According to Parker, he fell because of oil on the cement floor. The oil was leaking from the base of the "booster blower". Parker predicated his claim for damages (as opposed to workmen's compensation benefits) on the contention the defendants failed in their duty to provide him with a safe place to work.
Appellants list four specifications of error by the jury: (a) the finding of liability on the part of Kilgore and Brooks was manifestly erroneous, (b) the trial court's charges on proximate cause was erroneous and hence, caused an erroneous verdict, (c) the jury failed to find the plaintiff had assumed the risk and/or was contributorily negligent, and (d) the award was excessive.

I.
Appellants contend the jury's findings of liability as to executive officers, Kilgore and Brooks[2], was manifestly erroneous since the evidence clearly showed neither of these defendants had breached a personal duty to plaintiff or had actual or constructive knowledge of the alleged safety defect.
Kilgore, as general manager of the Tenneco Oil Refinery in Chalmette, had responsibilities which were delegated to four major departments: Operations, technical, administration and maintenance. Under the "operations" department, the delegation of responsibility was as follows: Kilgore (refinery general manager), then Charles Lambert (head of operations), then Clark Johnson (superintendent of operations), then the operating foreman, Al Thomas.[3] Kilgore admitted he and all levels of management had the responsibility of providing a safe place to work, but contended he did not have the direct responsibility for operation of the F.C.C. Unit. Kilgore further denied any knowledge of a leak on the booster blower and testified that he relied primarily on the operating foreman for knowledge of day-to-day conditions at the unit.
Brooks, as supervisor of safety and security at Tenneco, was in charge of safety, fire protection and security. He denied having any responsibility for or in connection with operation or maintenance of the booster blower unit. Brooks conducted safety meetings and inspected the refinery for compliance with company rules and OSHA rules and made recommendations for improvements. Moreover, he had the authority to write a work order should he find violations. Annual mock OSHA inspections of the entire plant were conducted by Brooks. He had personally participated in the F.C.C. Unit inspections in early 1975 and early 1976 (the time period during which the leaking booster blower was left unremedied). It was admitted by Brooks that oil in the area where Parker was injured was a common, recurring problem.
Claude Rome, chairman of the union's health and safety committee, was on the joint (labor and management) health and safety committee along with the defendants, Brooks, Lambert and DeLaughter. Rome testified that he had apprised these defendants of the oil leak problems in the general area as early as March 1975 and as recent as two weeks prior to the accident in March 1976. Rome characterized the booster *685 blower leaks as a common problem of continuous leaking.
According to Lambert, operations manager, Linn Perriera, as the operating foreman of the unit, was directly responsible for the operation and maintenance of the F.C.C. Unit.
Canter v. Koehring, 283 So.2d 716 (La. 1973) enunciated the criteria for imposing individual liability on executive officers.[4]
Unquestionably, Tenneco, as Parker's employer, had a duty to provide him with a safe place to work. This duty was delegated by Tenneco to Charles Kilgore who in turn delegated his duty to responsible subordinates, namely, Charles Lambert, Clark Johnson, Linn Perriera and Ray Brooks.
Since Kilgore properly and prudently delegated these responsibilities to subordinates who were not shown to be incompetent, he should not have been found personally at fault in creating the dangerous condition. Further, there is no evidence he had personal or constructive knowledge of the condition which led to Parker's injuries. Hence, under the criteria set out in Canter v. Koehring, supra; Payton v. Travelers Ins. Co., 373 So.2d 1324 (La.App.1979), the jury's finding of liability on Kilgore was manifestly erroneous. Accordingly, we hold that the jury's conclusion of negligence as to Kilgore was "clearly wrong" and hence, is reversed as to this defendant.
Although Perriera was on vacation at the time of Parker's fall, he was the regular operating foreman charged with the duty of providing maintenance of the booster blower unit. From the evidence presented, the jury could and apparently did conclude negligence on his part due to his failure to remove the cause of the oil leak.
Clearly, under the criteria of Canter, supra, Ray Brooks and Linn Perriera breached their delegated duty to provide a safe place for Parker to work. Therefore, we hold the jury's finding of liability on the part of the defendants, Ray Brooks and Linn Perriera to be correct.

II.
Defendants-appellants contend the trial court's charge on proximate cause was an incorrect statement of the law and resulted in a verdict contrary to the evidence.
The charge made by the trial court was as follows:
"As to the requirement that plaintiff's injury be caused by defendant's conduct, I do not mean that the law recognizes only one cause of any injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things may operate at the same time, either independently or together, to cause injury or damage. You should resolve this question by deciding whether *686 plaintiff would probably not have suffered the claimed injuries in the absence of defendant's conduct. If plaintiff probably would have suffered those injuries regardless of what the defendant did, then you must conclude that the injuries were not caused by the defendant, and render a verdict for that defendant. If, on the other hand, plaintiff probably would not have suffered the claimed injuries in the absence of defendant's conduct, then you must conclude that defendant's conduct did play a part in plaintiff's injury and you must proceed to the next element."
Counsel for defendant argues the charge was erroneous because it omitted the "substantial factor" test first enunciated in Dixie Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
The instruction given does, in essence, state the principle that where the defendant's conduct is not a cause in fact of the accident (i. e., where the conduct is not a substantial factor in causing plaintiff's harm), then he cannot be held liable. By instructing that "if ... plaintiff probably would not have suffered the claimed injuries in the absence of defendant's conduct..." the court below, in our view, sufficiently covered the "substantial factor" test, and as such did not misstate the law. This is particularly so when the portion of the charge quoted is viewed in the light of the general charges. For example, the general charge contained the following statements:
"You should consider what I say about the law as a whole. You should not single out any one sentence, or individual point or idea, and ignore the others."
Accordingly, we conclude that the charge made by the trial judge was not a misstatement of the law, nor is it a cause for reversing the jury's verdict.

III.
Appellant contends the failure of the jury to find that Parker had assumed the risk and/or was contributorily negligent was manifestly erroneous. In essence, the contention is grounded in the view that since plaintiff was aware of the presence of the oil on the cement floor, he must be presumed to have consented to take the risk associated with the dangerous condition or to have been contributorily negligent in walking through the oil.
Parker testified that it was his job to check the pressure gauges on the F.C.C. Unit every two hours. In his view, the only way to read the gauges was to go up the ladderas he did when he was injured. According to Parker, the leak from the base of the booster blower was "a pretty severe leak" which he could not have fixed himself. Parker contended there was always an accumulation of oil beneath the booster blower. At previous times, he had tried to clean up the oil with rags, but the safety department had said to stop doing this because it was a fire hazard. At the time of the accident, Parker was wearing safety shoes he had purchased through Tenneco. In essence, Parker's testimony was to the effect that the oil leak was a known hazardous situation which his employer was requested to remedy but failed to do so.
Under cross-examination, Parker admitted he had seen the oil prior to stepping in it, and there was no emergency or hurry to get it cleaned at the time. Generally the night shift would clean the oil at the end of its shift and the day shift would let it accumulate. On re-direct, Parker stated it would take approximately thirty minutes to clean the accumulated oil, but his duties would not permit him to do that every time he checked the gauges. Parker further stated that he was never supplied with any type of chemicals or other cleansing agents to clean the oil which had accumulated from the leak.
Thomas Fitzgerald, operator at Tenneco, had worked on the shift prior to plaintiff's shift and had cleaned the oil prior to Parker's *687 arrival at work. Fitzgerald stated that oil leaks had existed on the booster blower for one year prior to Parker's injury and that an operator could not climb the ladder and check the gauges without walking through oil slicks.
Albert Thomas, Linn Perriera and Charles Lambert, defendants, all testified that "housekeeping" (cleaning up oil) is required of all employees. Both Thomas and Perriera denied ever ordering any employee to walk through oil.
For an employee to be held contributorily negligent and/or to have assumed the risk of harm which results in injury, defendant must prove, by a preponderance of the evidence, that plaintiff voluntarily and knowingly exposed himself to the danger which resulted in his injury. It must be found that (1) a known and obvious danger existed and (2) a readily available reasonable alternative was available. Billedeaux v. Adams, 355 So.2d 1345 (La.App. 3rd Cir. 1978); and cases cited therein.
It has been established by a preponderance of the evidence that a known and obvious danger (i. e., the oil puddle) existed. However, it has not been proven by a preponderance of the evidence that a readily available reasonable alternative was available which would have allowed Parker to pursue another course of action.
The law does not require the worker to be placed in a position of working in danger and then be blamed for his injuries. Payton v. Travelers, supra; Canter v. Koehring, supra; O'Keefe v. Warner, 288 So.2d 911 (La.App. 1st Cir. 1974); Chaney v. Brupbacher, 242 So.2d 627 (La.App. 4th Cir. 1970).
Apparently the jury believed the appellant's claim of assumption of the risk by Parker lacked merit. We concur.
We now turn to the defense of contributory negligence. For it to apply, it must be established that the dangerous condition was of an obvious character which displayed to all concerned to use a high degree of care and caution in negotiating the area where the substance was present. Marino v. Clark, 349 So.2d 429 (La.App. 4th Cir. 1977), writs refused 351 So.2d 177.
He who claims contributory negligence must prove by a preponderance of the evidence that the injured party failed to act as a reasonable and prudent man and that his negligence was a contributing cause of the accident. Watson v. Illinois Central Gulf Railroad, 355 So.2d 1366 (La. App. 1st Cir. 1978).
While defendants have shown knowledge of the oil leak on plaintiff's part, they have not shown that plaintiff failed in his duty of exercising ordinary care for his own safety. Parker was wearing safety shoes at the time of the accident and was using stairs required to be used in the course of his occupation. The stairs did not meet OSHA safety regulations (as testified to by a safety professional) since they had no hand-rail. Parker had attempted to clean the leak previously, to no avail.
In our view, the jury had ample basis to conclude Parker was not contributorily negligent. Hence, we cannot say it was manifestly erroneous in its decision.

IV.
Appellants contend the jury's award of $500,000.00 in damages was grossly excessive and constituted an abuse of the jury's discretion.
Dr. Robert E. Ruel, Jr., an orthopedic surgeon, treated Parker. Initially, Dr. Ruel diagnosed plaintiff's injuries as a back sprain. A myelogram and discogram were subsequently conducted and a laminectomy was performed on the L-5, S-1 disc on November 8, 1976. In February 1977, Parker returned to light duty but was re-admitted to the hospital in October 1977 because he was not responding to conservative treatment and he was complaining of leg and back pains. A total laminectomy at the L-4, L-5 and L-5, S-1 levels was completed and a fusion was performed. Parker then wore a back brace for six months. Dr. Ruel believed Parker should not have a job which requires frequent climbing, bending, *688 stooping or lifting of weights over twenty-five pounds. In addition, Dr. Ruel referred Parker to a psychiatrist because of Parker's need for pain medication.
Dr. Richard Levy, a neurologist, examined Parker after both operations. After the first operation, Dr. Levy ascribed a 5 to 10% partial permanent disability to the body as a whole and an undetermined additional disability after the second operation. It was Dr. Levy's opinion that Parker could do moderate secondary work in which he could lift thirty to forty pound weights.
Dr. William Super was Parker's treating psychiatrist. Super related Parker's depression over his loss of mobility, his inadequacy in dealings with his wife and small children, and his trouble coping with the permanent nature of his injury. Dr. Super prescribed anti-depressant drugs and tranquilizers for Parker, and diagnosed him as "depressive-neurotic, post traumatic." In Dr. Super's opinion, Parker's mental condition was a direct result of his accident. However, he also related his belief that plaintiff is a good candidate for rehabilitation because he does not want to concede defeat.
Susan Smith, a vocational rehabilitation and occupational therapist, testified that Parker is limited in his functional capacity, primarily because of his inability to perform activity with any spontaneity or agility. It was her opinion that Parker, even though highly motivated, will have a long struggle to obtain a job which he could maintain, with said job having to be a "highly selective job" which would not put a strain on his back. It was Smith's further opinion that Parker had plateaued insofar as developing functional, physical skills were concerned.
Dr. Seymour Goodman, an economist, testified that Parker's past lost earning income was $37,443.20 (this was net wages less industrial pay, including overtime, but not deducting workmen's compensation) and future lost earning income was $674,630.17 (computed using a 6¾% discount rate and a 28.4 year life expectancy and after deducting the industrial pay to which Parker was entitled). The future loss of earnings income was also computed with the view Parker would find a job paying minimum wages and hold it for the remainder of his life expectancy. On cross-examination, Dr. Goodman testified the past lost earnings income would be $34,618.67 if overtime earnings in the year 1976 was deleted. In addition, he testified future loss earning income would be reduced to $429,505.53 if a 6¾% discount figure was used, and, instead of using minimum wages pay, the disability benefits payable by Tenneco were available for 28.4 years of life expectancy. Using a 10% discount rate in lieu of 6¾% rate would reduce the earned income loss to $315,777.79.
In our view, there is ample evidence to conclude Parker would no longer be able to perform the work he did perform prior to his injuries and as a result would sustain a minimum loss in future earning income of at least $315,000.00 and perhaps as much as $674,000.00.
Johnny Parker, plaintiff, was active prior to his injury, with hunting and fishing being important pastimes. He cannot do either of them now, nor play with his two small children. In addition, if he walks, stands, or sits for too long a period of time, the pain in his back and legs worsens. At the time of trial (in early 1980), Parker was still taking pain pills, tranquilizers and muscle relaxants. In the light of this evidence, the jury concluded $500,000 was a fair and just award for the damages sustained.
A jury award for damages will not be modified on appeal unless it can be determined that the amount awarded was clearly wrong. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Reck v. Stevens, 373 So.2d 498 (La.1980). We cannot say the award made by the jury was "clearly wrong".
The compensation payments have continued since the date of the trial. Subsequent to submission of this matter, a stipulation was entered into the record showing the amount of medical expenses and workmen's compensation payments made to Parker from the inception of his injuries to now.
*689 Accordingly, the judgment herein is amended to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment over in favor of JOHNNY EARL PARKER and against defendants, RAY BROOKS, LINN PERRIERA and THE TRAVELERS INSURANCE COMPANY, in solido, in the sum of FIVE HUNDRED EIGHTEEN THOUSAND, ONE HUNDRED THIRTY-SEVEN AND 32/100 ($518,137.32) DOLLARS, together with legal interest from date of judicial demand and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment over in favor of TRAVELERS INSURANCE COMPANY, as intervenor, and against plaintiff and the above named defendants for the sum of SIXTEEN THOUSAND, NINE HUNDRED NINETY-FOUR AND 40/100 ($16,994.40) DOLLARS in workmen's compensation benefits and for the further sum of EIGHTEEN THOUSAND, ONE HUNDRED THIRTY-SEVEN AND 32/100 ($18,137.32) DOLLARS in medical benefits, and that the sums of workmen's compensation benefits be increased at the rate of EIGHTY-FIVE AND NO/100 ($85.00) DOLLARS per week until cessation of workmen's compensation benefits.
AMENDED AND AFFIRMED.
SAMUEL, J., dissents with written reasons.
SAMUEL, Judge, dissenting.
As I understand the record, Tenneco refinery employees, particularly the plaintiff in this case, were required to clean up oil spills. Further, the danger of using the ladder with the oil at or near its base had to be obvious to the plaintiff (in this connection, it is difficult for me to understand how the floor of any oil refinery reasonably could be expected to be free from oil).
In my view, plaintiff's claim should be barred by both assumption of the risk and contributory negligence. Additionally, even assuming liability, the $500,000.00 award is so excessive as to constitute an abuse of the jury's discretion.
Accordingly, I respectfully dissent.
NOTES
[1] $500,000.00 was the amount of the jury verdict. An additional $17,531.68 was added to cover medical expenses pursuant to a stipulation entered into by the parties.
[2] Note that one of the defendants, Linn Perriera, was not included in this specification of error.
[3] The regular operating foreman in charge of the F.C.C. Unit was Linn Perriera. Al Thomas was his vacation relief. Both were included as defendants.
[4] The criteria are as follows:

"1. The principal or employee owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstanceswhether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk of others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm."