423 So.2d 1088 (1982)
Pauline MARTINEZ
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY and Darrell Ford.
No. 82-C-1187.
Supreme Court of Louisiana.
November 29, 1982.
*1089 James L. Donovan, Donovan & Lawler, Metairie, for applicant.
Wayne W. Yuspeh, Metairie, R. Ray Orrill, Jr., New Orleans, for respondents.
DENNIS, Justice.
This is an executive officer suit by Pauline Martinez against Darrell Ford, vice president-treasurer of Waterbury Drugs, Inc. and his liability insurer, United States Fidelity and Guaranty Company. Plaintiff's cause of action arose prior to passage of Louisiana Acts 1976, No. 147, § 1, which amended La.R.S. 23:1032 by restricting executive officer liability to responsibility for intentional torts. She alleged that Ford breached a duty to provide her with a safe working environment, resulting in a chain of events which percipitated a serious nervous and mental breakdown. After trial, a jury awarded Martinez $485,000. On appeal, the award was reduced to $465,240. La.App., 412 So.2d 109. We granted certiorari, and further reduce the award to $318,761.73. The judgment in all other regards is affirmed.
On February 25, 1975, plaintiff was seated at her desk at Waterbury's when Darrell Ford, her office manager, asked her to go to the bank. As she arose from her desk, she tripped over the cord of a ten-key adding machine which was extended across the only passageway from Mrs. Martinez's work area. As a result of this fall, Mrs. Martinez was away from her job for approximately two months. During that time, she was under the care of Dr. Courtney Russo, an orthopedist, and Dr. Millard Jensen, a psychiatrist.
When she returned to work, on April 19, 1975, her first assignment from Mr. Ford was to go to the storage room at Waterbury's and separate records of Waterbury's that were stored in large packing boxes from those of another company. Several co-employees volunteered to go in Martinez's place. They had noticed that she was visibly distressed by the assignment, and that she was trembling and extremely nervous. Despite these volunteers, and although the task of searching for records in the storage room was usually performed by two co-employees, or by one and an office handyman, Ford sent Martinez alone. Upon her return from the storage room several hours later, Martinez was so emotionally upset that she had to call her son to come and take her home. Her clothes were soiled by dust. She has not returned to work since.
These two incidents form the basis of the plaintiff's complaint. She alleged that Ford breached a duty to provide a safe working environment by allowing the electrical cords to stretch across walkways, causing her fall, and by sending her in to perform the strenuous task in the records room, aggravating her mental condition.
The court of appeal refused to upset the findings of the jury that Mr. Ford was liable to Martinez because of his conduct in both incidents, and that Mrs. Martinez was not guilty of contributory negligence. The court of appeal also declined to reduce the award of $147,000 general damages, finding that it was not an abuse of discretion, and the award of $232,000 medical expenses. The appeals court reduced the amount awarded for lost past wages and loss of future wages by $19,760.
*1090 To this result, the defendants assign five errors: (1) The court of appeal erred in not finding Pauline Martinez negligent or contributorily negligent in the incident on February 25, 1975; (2) The court of appeal erred in finding the defendant liable for the incident on April 19, 1975 since he had no knowledge that her assignment to the records room would contribute to an emotional breakdown; (3) The court of appeal erred in not reducing the award for general damages; (4) The court of appeal erred in not reducing further the award for lost wages; and (5) the court of appeal erred in not reducing the award for medical expenses, past and future.
We find no merit in any of these conditions save the last.

CONTRIBUTORY NEGLIGENCE
The jury by interrogatory found that the plaintiff was not guilty of contributory negligence. We agree with the court of appeal that this finding was not manifestly erroneous. Soileau v. South Central Bell, 406 So.2d 182 (La.1981).
The standard for contributory negligence in employee executive officer suits was correctly set forth in Miller v. Employers Mutual Liability Insurance Co., 349 So.2d 1353 (La.App. 2nd Cir.1977):
Emerging as criteria for determining an employee's contributory negligence are: (1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee's situation; (3) the degree to which the employee's conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger.
The record supports the jury's finding that Pauline Martinez had not failed to observe or do something that she ought to have observed or seen, and would have done with ordinary care. Siau v. Rapides Parish School Board, 264 So.2d 372, 375 (La.App. 3d Cir.), writ refused 262 La. 1148, 266 So.2d 440 (1972). Mr. Ford had been informed on several occasions, although admittedly on some of these by the plaintiff herself, of the dangers presented by the electric cords extending across walkways in the office. In fact, on several occasions, employees had stumbled, although none had received serious injuries. Ford testified that there were measures that could have been taken, with minimal cost to Waterbury's, to eliminate the hazards presented by these cords. Because of the configuration of the office furniture, the plaintiff was forced, when requested to leave her desk for the bank, to cross the wire extending from the adding machine. Defendant asserts that this fact proves the plaintiff must have been aware of the wire. However, the cord was brown and matched the floor, and no one could explain how or when the adding machine was put on her desk. The position of it indicated that she could not have used it since it was on the left side of her desk and she is right handed.
After weighing the relative knowledge of the danger of each party, the officer's relative control over the employee's situation, the degree to which the employee's conduct was voluntary, the lack of alternatives available to her, the obscurity of the danger, and the officer's superior ability to eliminate the danger, we conclude the plaintiff was not guilty of contributory negligence.

LIABILITY
Defendants contend that they should not be held liable for plaintiff's mental, emotional and physical disorders which developed after the April 19, 1975 "storage room" incident because Darrell Ford, her office manager did not assign her to the record sorting detail with the intention of injuring her. Our review of the unrebutted testimony of the plaintiff's psychiatrist, Dr. Millard Jenson, reflects, however, that all of the plaintiff's problems stem from her fall in which she injured her head on February 25, 1975. In Dr. Jensen's opinion, the plaintiff regressed after this trauma and developed a multisymptomatic psychosis, which has caused her to suffer actual organic injury and illness from time to time, and from *1091 which she probably will never recover. It is clear from the doctor's testimony that he related all of plaintiff's ailments to her original head injury and did not think that she had recovered from her underlying psychosis at the time of her mental breakdown following the "storage room" incident. Consequently, defendants are liable in damages for any harm suffered by the plaintiff as a result of her fall on February 25, 1975 after tripping over the adding machine cord. Cf. W. Prosser, Law of Torts 320 (1971).

QUANTUM
The third assignment of error involves the award of $147,000 for general damages. The defendants claim that this figure is too high, but they do not present any argument or authority to substantiate their claim. The plaintiff's damages are summarized as follows: (1) physical symptoms of an emotional breakdown including double vision, fainting, severe headaches, weak spells, nausea and vomiting; (2) frequent depression and anxiety, leading to an inability to cope with the daily activities of life; (3) orthopedic problems requiring the use of a wedge in one shoe to compensate for a pelvic tilt and a back corset; (4) activation of a dormant arthritic condition; (5) cervical pain requiring treatment in traction. Under these circumstances, and without some reason given to require a contrary finding, the award was not clearly shown to be an abuse of discretion, and will not be disturbed. Anderson v. Welding Testing Lab, Inc., 304 So.2d 351, 352 (La. 1974).
The fourth assignment of error complains of a failure to deduct from the plaintiff's award for lost earnings her expected income taxes. The defendants assert that the payroll records of the plaintiff which were introduced in evidence set forth withholdings from plaintiff's wages for income taxes. These exhibits reflect:

 EARNINGS WITHHOLDINGS
1972 $5,089.87 $670.30
1973 4,965.00 655.50
1974 4,113.75 672.40
1975 1,558.00 285.11

However, these figures do not prove the level of the plaintiff's tax liability. The plaintiff asserts in brief that due to the small income of the plaintiff, her withholdings are customarily returned to her. Without any additional information regarding the tax liability of the plaintiff, we find that we are unable to do more than speculate about the level of her liability, and we decline to do so. Moreover, it is evident to us that if the plaintiff is liable for income taxes, the amount is de minimus, and in a case such as this, the confusion that would be introduced by the calculation outweighs any real increase to equity that would be realized. Cf. Norfolk & Western R. Co. v. Liepelt, 444 U.S. 490, 494, 100 S.Ct. 755, 758 n. 7, 62 L.Ed.2d 689, 694 (1980). Since the defendants have not presented us with any assistance in the calculation of the plaintiff's true tax burden, we will not expend valuable judicial resources in speculation upon what is surely an insignificant amount.
In passing, we note that this court has never decided whether income taxes may be considered at all in formulating damage awards, and that our courts of appeal are divided on the issue. Reeves v. Louisiana & Arkansas Railway Co., 304 So.2d 370 (La. App. 1st Cir.) cert. denied, 305 So.2d 123 (La.1974); Menard v. Travelers Ins. Co., 240 So.2d 390 (La.App. 3rd Cir.1970); Teal v. Allstate Ins. Co., 348 So.2d 83 (La.App. 4th Cir.) cert. denied, 351 So.2d 164 (La.1977); Annot., 16 A.L.R. 4th 589, 614 (1982). The parties in this case have not argued the merits of this question, however, and we decline to consider this important issue on the record and briefs before us, since we have found that in the context of this case it is unnecessary for us to do so.
The final assignment of error involves the award of $232,000 for medical expenses. Of this amount, $23,521.73 was stipulated as past medical expenses, and is therefore not in dispute. Of the remainder, $62,000 is fully supported by the uncontradicted testimony of Dr. Jensen who feels that the *1092 plaintiff will expend $200 a month for psychiatric support for the remainder of her 26 year life expectancy. Dr. Jensen also testified that it is possible that the plaintiff may require future hospitalizations, and that, if so, each period of confinement would cost between $2000 and $4000. The doctor did not say that her future hospitalizations are a probability and he did not hazard a guess as to how many times she would need in-patient care in her lifetime. Indeed, at one point, Dr. Jensen testified that there is a possibility that plaintiff's condition may improve when she is relieved of the stress of this litigation. Dr. Russo has not seen the plaintiff in at least six months prior to trial, and his testimony revealed no indication that the plaintiff will have to undergo any future medical expenses for her orthopedic or cervical problems.
Thus, it is plain on the record that the plaintiff has failed to carry her burden of proving that there is a probability that she will undergo future hospitalizations because of her psychiatric illness caused by the negligence attributable to the defendants. The evidence does not support an award of $166,489 for such hospitalizations. Spillers v. Montgomery Ward & Co., Inc., 294 So.2d 803, 809 (La.1974). Accordingly, we reduce the plaintiff's award of $232,000 for future medical expenses to $85,521.73, a sum which provides for her past medical expenses, and future expenses for psychiatric support.

DECREE
The judgment of the court of appeal is affirmed with regard to the liability of these defendants. The judgment is amended to reduce the award to $318,761.73.
AMENDED AND AFFIRMED.