479 So.2d 498 (1985)
James E. PELLERIN
v.
TUDOR CONSTRUCTION COMPANY, et al.
No. CA 84 1018.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Rehearing Denied December 26, 1985.
Allen J. Borne, Franklin, for plaintiff-appellant.
Randall L. Champagne, and Douglas K. Simmons, and Howard W. Martin, Lafayette, for intervenor-Employers Comm., defendant-appellee.
John Blackwell, New Iberia, for Tudor Const. Co. and Commercial Union Ins. Co. and T. Clayton Price, defendants-appellees.
*499 Before LOTTINGER, COLE and CRAIN, JJ.
COLE, Judge.
The question presented on appeal is whether the trial court properly rendered a Judgment Notwithstanding the Verdict in an executive officer negligence action, finding no liability on the part of the defendants.
The posture of this proceeding has been set forth in Pellerin v. Tudor Const. Co., 414 So.2d 403 (La.App. 1st Cir.1982), writ denied, 420 So.2d 455 (La.1982), as follows:
"This is an `executive officer' suit wherein plaintiff, James R. Pellerin, sued his employer, Tudor Construction Company, Inc., his employer's insurer, Commercial Union Assurance Company, and T. Clayton Price, superintendent for the plaintiff's employer. The suit is for personal injury damages sustained on February 6, 1976, when plaintiff slipped and fell off a wall while in the course of his duties as a carpenter, causing a serious head injury. Tudor Construction Company was dismissed from the suit on a peremptory exception of no cause of action on the grounds that it was the employer of plaintiff, and that plaintiff's sole remedy against it was in workmen's compensation, La.R.S. 23:1032.1 By the time of trial, the only remaining defendants were T. Clayton Price and Commercial Union Assurance Company.2 [Footnote omitted.]
At trial, defendants moved for a directed verdict at the close of plaintiff's case. The motion for a directed verdict was denied by the trial court. The defendants put on no additional evidence, and the case was submitted to the jury. The jury returned a verdict for the plaintiff. The defendants then moved the trial court grant a new trial on the issue of liability, arguing that the jury verdict in favor of plaintiff was clearly contrary to the law and evidence, pursuant to La.C. C.P. art. 1972. Motion for a new trial on these grounds was granted by the trial court. Because no appeal lies from the granting of a motion for a new trial since same is not a final judgment, the plaintiff applied for supervisory writs to this court, alleging that he would sustain irreparable injury if forced to go through another trial. This court granted a writ of certiorari and ordered the record to be transmitted from the trial court. All proceedings in the trial court where held in abeyance pending this court's determination of the propriety of the trial court's actions under the unique circumstances presented.
1 Suit against an `executive officer' for negligence is available to plaintiff because the injury occurred prior to the 1976 amendments to La.R.S. 23:1032, the exclusive remedy provision."
Thereafter, in Pellerin v. Tudor Const. Co., supra, the writ of certiorari previously issued was recalled by this court and the cause was remanded to the trial court for a new trial, as per judgment of the trial court dated May 19, 1981. On February 24, 1984, the new trial was conducted solely on the issue of liability. The jury returned a special verdict finding the defendants liable for negligence and finding no contributory negligence on the part of the plaintiff. The defendants filed a motion for Judgment Notwithstanding the Verdict and in the alternative a motion for new trial. The trial court granted the motion for JNOV and the motion for new trial conditioned on the Court of Appeal reversing the JNOV in favor of the defendants. The trial court stated,
"The Court is of the opinion, considering all of the evidence in the case, that the plaintiff has not established negligence on the part of the executive officer in this case. The Court is further of the opinion that the evidence clearly establishes that the plaintiff was guilty of gross contributory negligence at the very least in the decision on this case. The Court will, therefore, grant the judgment notwithstanding the verdict and, in the alternative, finding that the findings of the jury were clearly contrary to the law and the evidence, the Court in the alternative would grant a new trial in this *500 matter, although the Court does not see any reason for doing so."
From this judgment the plaintiff appeals.[1]

FACTS
The new trial adduced the following uncontradicted evidence previously set forth in Pellerin v. Tudor Const. Co., supra at 404:
"The accident from which the suit arose occurred on February 6, 1976. The plaintiff was employed as a carpenter for Tudor Construction Company, which at the time of the accident was engaged in construction of Inglewood Mall in Morgan City. On the morning of the accident, plaintiff left his residence in Verdunville to travel by car to Morgan City. Weather conditions were rainy and stormy, and plaintiff began to wonder if work were possible that day. Plaintiff returned home to call the work site and find out whether he was to work that day. Plaintiff's wife contacted defendant T. Clayton Price on the telephone. Price informed Mrs. Pellerin that plaintiff should indeed report to work, and plaintiff did so.
After reporting to work, plaintiff was assigned by Price the task of finishing the window frames for an outer wall of a building. This task required plaintiff to work from a scaffold outside of the wall. The scaffold was about 25 feet inside of an overhang roof, but was otherwise exposed to the elements. This overhang was approximately 20 feet high.
The wall which plaintiff was working with was approximately five feet high. Plaintiff's task was to do precision work on the window frames which would allow the wall to be completed. The already completed portion of the wall was covered with a sheet of visqueen for protection. The visqueen was held in place by a number of bricks on top of the wall. Plaintiff used a scaffold to finish the window frames. He was assisted in his task by a helper. The helper's job was to move the scaffold along the wall as requested by the plaintiff. Plaintiff ordinarily climbed down from the scaffold while it was being moved by the helper. However, just before the work was completed, the plaintiff elected to step from the scaffold onto the visqueen-covered wall. In so doing, the plaintiff tripped over one of the bricks holding down the visqueen, and fell headfirst to the floor inside the wall, causing him serious injuries."
In addition, it was shown a terrazzo floor was being installed inside the visqueen-covered wall. The visqueen had been placed upon the wall to protect the wall from the spray of water and particles which resulted from the grinding operations conducted to complete the terrazzo floor.
The plaintiff testified he stepped onto the wall because the scaffolding ladder could no longer be employed to descend when the scaffold was moved. The ladder became unusable, according to plaintiff, because moisture had accumulated on the floor and every time plaintiff climbed back onto the scaffold the ladder became more slippery and dangerous. The plaintiff believed he had no choice, because of the unavailability of any alternative to the slippery ladder, *501 but to climb onto the wall so the scaffold could be moved or he would have been unable to complete his job.
T. Clayton Price, the executive officer, testified he inspected the plaintiff's work site at 7:00 A.M. Although it had been raining earlier in the morning, Mr. Price stated, the presence of water was insignificant and would not have prevented plaintiff from performing his job. Further, Mr. Price testified, the plaintiff was provided with a scaffolding to work on because Mr. Price intended and anticipated this to be the safe method for the plaintiff to perform his job. The plaintiff was never authorized by anyone to use the wall to perform his job because there was a danger of damaging the work and it was a hazardous material to stand on because of its slick nature. Mr. Price stated alternative means of getting up and down from the scaffolding were available in the form of several stepladders maintained on the jobsite. Further, Mr. Price stated the plaintiff might have laid down on the scaffold enabling it to be moved safely. The plaintiff was provided with a helper to assist him in obtaining whatever was necessary to complete his work.
Mr. Philip Frederick, Jr., the plaintiff's helper, testified he would have performed any task the plaintiff required of him including obtaining a stepladder; drying off the scaffold ladder rungs; or helping the plaintiff down. Further, Mr. Frederick testified both he and the plaintiff were instructed not to step on the wall if at all possible because the mortar was not yet dry. However, it must be noted Mr. Frederick is the brother-in-law of Mr. Lynn Guidry, the present superintendent for Tudor Construction, and drove to the trial with him. In addition, Mr. Frederick's testimony at trial was contradicted by prior testimony on several points including whether it was raining on the day of the accident and whether the scaffolding was dry or not.
Mr. Lynn Guidry, then the assistant superintendent on the job where the plaintiff was injured, testified he informed the plaintiff specifically not to step on the brick wall covered with visqueen because it was green (not yet set). Mr. Guidry stated no stepladders were located in the area where the plaintiff was working.

JNOV
La.Code Civ.P. art. 1811 allows a party to move for a judgment notwithstanding the verdict. A JNOV is appropriate only when the evidence points so strongly and overwhelmingly in favor of the moving party reasonable men could not arrive at a contrary verdict on the facts at issue. Menard v. King, 469 So.2d 15 (La. App. 1st Cir. 1985).
In this instance the facts at issue give rise to the following questions: Was the executive officer negligent; if so was this negligence causative of the accident; was the employee contributorily negligent; if so, was this contributory negligence a cause of the accident.[2]

THE NEGLIGENCE OF THE EXECUTIVE OFFICER
Whether there is actionable negligence providing a basis for an executive officer tort suit is to be determined under general tort principles. Batiste v. Robillard, 401 So.2d 1267 (La.App. 1st Cir.1981).
A statutory guideline for determining the duty as to safety owed by an employer to an employee is found in LSA-R.S. 23:13 which provides:
"Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment *502 considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations."
T. Clayton Price was, by his own admission, delegated by his employer the duty to maintain the premises of the construction site at Inglewood Mall in a safe and workman-like condition. Cf. Billedeaux v. Adams, 355 So.2d 1345 (La.App. 3d Cir. 1978), writ denied, 358 So.2d 640 (La. 1978), on the issue of executive officer liability. Mr. Price did maintain he performed an inspection of the site at 7:00 A.M. determining the presence of water about the scaffolding to be minimal and not an impediment to the plaintiff's job performance.
However, it is clear to this court it was raining on the day of the plaintiff's accident. The plaintiff stated this rain accumulated on the floor of his job site and consequently on the ladder rungs of his scaffold. Mr. Frederick was inconsistent with his prior testimony when he stated it was not raining that day and this inconsistency was brought to the attention of the jury. Further, the jury might have inferred the spray from the terrazzo work found its way to the scaffolding side of the brick wall.
In determining whether a JNOV is appropriate the trial court may not substitute its own credibility evaluations for that of the jury. Menard v. King, supra. From the evidence presented reasonable men could have found the work premises to be wet and that it is negligence, regardless of safeguards or alternative, to require an individual work on a scaffolding under such circumstances. Therefore, it would be erroneous for the trial court to grant a JNOV on the issue of the executive officer's negligence. It must now be determined whether the executive officer's action in requiring the plaintiff to work at wet premises was the cause of the accident or whether a different or contributing cause has been shown. To do so, consideration must be focused upon the issue of the plaintiff's negligence during which the presence of safeguards and alternatives will be weighed.

THE CONTRIBUTORY NEGLIGENCE OF THE INJURED EMPLOYEE
In Martinez v. U.S. Fidelity and Guar. Co., 423 So.2d 1088 (La.1982), the court states, p. 1090:
"The standard for contributory negligence in employee executive officer suits was correctly set forth in Miller v. Employers Mutual Liability Insurance Co., 349 So.2d 1353 (La.App. 2d Cir.1977):
`Emerging as criteria for determining an employee's contributory negligence are: (1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee's situation; (3) the degree to which the employee's conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger.'"
The Martinez court makes no mention of the standard set forth in Billedeaux, supra at 1348, in which the Third Circuit Court of Appeal stated:
"For an employee to be held contributorily negligent and/or to have assumed the risk of the harm which ultimately resulted in his injury, the defendant must prove, by a preponderance of the evidence, that the plaintiff voluntarily and knowingly exposed himself to the danger which resulted in his injury. That determination requires a dual finding of (1) a known and obvious danger and (2) a readily available reasonable alternative."
Therefore, we are of the opinion the Martinez court has rejected the channelized Billedeaux standard for the broader Miller standard.[3]
*503 Since the Martinez/Miller standard weighs all the circumstances of the employee's conduct it becomes more difficult for a court to use the JNOV procedure to overturn a jury verdict than it would if the Billedeaux standard were employed. Once an obvious danger is found Billedeaux only requires an inquiry into whether an employee had reasonable alternatives as opposed to Martinez/Miller which inquires into several factors simultaneously. Therefore, under Martinez/Miller a reviewing court can not ascertain with as much certainty the specific reason for a jury's finding on the issue of an employee's contributory negligence. This requires the exercise of an even greater restraint before the judgment of a reviewing court can be substituted for that of the original trier of fact.
Nonetheless, in this instance it is uncontradicted the injury was caused by the plaintiff's stepping from the scaffolding onto a loose brick holding down the sheet of visqueen covering the wall, losing his footing and falling. We agree with the trial court this election to step on the wall by the plaintiff is contributory negligence which as a matter of law bars the plaintiff's recovery. The rendering of the JNOV by the court was correct.
The plaintiff was under no compulsion to step to the wall so the scaffolding could be moved. In fact, several individuals testified the plaintiff was warned not to step on the wall. Further, it is obvious a sheet of visqueen with a film of moisture on it is going to be quite slippery. The plaintiff knew of this danger and yet he attempted to step on the wall anyway. The plaintiff contends he had to step on the wall because he could not use the scaffolding ladder which was wet. However, several more reasonable methods to eliminate the danger of a wet ladder were available, foremost amongst them was asking the helper, Mr. Frederick, to render aid in some form. The plaintiff's step to the wall was a simple expedient to avoid dismounting the scaffolding. It was an expedient which was dangerous and chosen with a lack of care. The record establishes the step was a voluntary action on the part of the plaintiff, an action which the executive officer had sought to avoid. The plaintiff clearly deviated from proper procedure and the intended method for performing his job. Therefore, in spite of the wet working conditions we find the plaintiff's action in stepping onto the wall to be the actual cause of the accident. The evidence points so strongly and overwhelmingly in favor of the moving party on this factual issue, reasonable men could not arrive at a contrary verdict. Accordingly, we affirm the JNOV rendered by the trial court.
Costs on appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] The judgment further provided,

"IT IS FURTHER ORDERED that in the event this judgment notwithstanding the verdict is set aside and the order granting a new trial is also set aside by the Court of Appeals, that any subsequent judgment in favor of the plaintiff, James R. Pellerin, recognize that the sum of $35,785.00 has been paid by Commercial Union Insurance Company as compensation benefits and the sum of $28,980.89 in medical benefits has been paid prior to the trial and that said amounts be reimbursed to the intervenor, Commercial Union Insurance Company, with legal interest from date of judicial demand until paid by preference and priority and further that Commercial Union Insurance Company be reimbursed by preference and priority out of any judgment in favor of the plaintiff to the extent of any weekly compensation benefits and/or medical benefits it has paid from the date of the trial until such judgment is satisfied and further that upon the payment of any judgment to the plaintiff, that Commercial Union Insurance Company as intervenor receive credit for the amount of $235,234.00 toward any future compensation payments which may be owed to the plaintiff."
[2] The plaintiff's accident occurred on February 6, 1976, prior to the adoption of comparative negligence by the legislature.
[3] Both appeal counsel provide in brief the Billedeaux standard is the proper one for this court to apply on review.