JOHN A. PATIN, Judge Pro Tem.
This is a suit for personal injury brought under 33 USCA § 905(b). Plaintiff-appellants, Donald and Tamra Thompson, sued defendant-appellee, Penrod Drilling Company for injuries allegedly sustained by Mr. Thompson while working as a tong operator on a jack-up rig owned by Penrod. After a jury trial on the merits, the jury found no negligence on the part of Penrod. Plaintiffs moved for judgment notwithstanding the verdict, and alternatively for a new trial. The trial court denied the motions and the plaintiffs filed a devolutive appeal. They assert two assignments of error:
(1) the jury erred in finding no negligence on the part of Penrod, as such a verdict was clearly contrary to the evidence presented; and
(2) the trial court erred in refusing to grant the motion for judgment notwithstanding the verdict and, alternatively, for new trial.
In December of 1985, Donald Thompson was employed as a tong operator for Rebel Rental Tools, Inc., when he was sent to work on Penrod Rig 86. The rig was owned and operated by Penrod Drilling Company under contract with Amoco. Mr. Thompson’s job on the rig involved operating a 600 pound tong used to couple and uncouple joints of drilling pipe.
In the early morning hours of December 4, 1985, Mr. Thompson was allegedly injured while he operated the tongs. He alleges that the tongs were hung on a “dead line” from the drilling structure and as a result he was required to push the tongs to the pipe joints; an act which demands considerable strain. Mr. Thompson alleges that in pushing the tongs to the *1209 joints, he injured his neck but, not realizing the severity of his injury, continued to operate the tongs until completion of the shift.
Upon completion of the job, Mr. Thompson returned home and on December 8, 1985, reported to the Lafayette General Medical Center complaining of neck and shoulder pain. He was placed under the care of Dr. Margaret Longo, who advised him to refrain from work for two weeks. This he did, returning to work two weeks later and continuing to work until April of 1986.
Mr. Thompson left Rebel and went to work for South Coast Tong Rentals. He claims that he was still experiencing pain in his neck and shoulders, but he worked for South Coast through August of 1986. At that time, he began to complain of worsening pain, of which he advised Rebel, since he related his pain to the injury sustained while under its employ. He was instructed to again see Dr. Longo, which he did in September of 1986.
He was referred by Dr. Longo to Dr. Robert Rivet, a neurosurgeon, who performed a cervical fusion on him. Complaining of continuing pain, Mr. Thompson visited six more doctors, either physicians or chiropractors, seeking relief. According to Mr. Thompson, relief was not forthcoming.
Suit was filed on April 16, 1987. It was stipulated that the matter be tried under the provisions of 33 USCA § 905(b). Trial was commenced on September 19,1989 and the jury returned a verdict finding Penrod not negligent, on September 26, 1989. The trial court denied the motions for judgment notwithstanding the verdict and new trial on November 20, 1989.
It is the position of appellants that Pen-rod was negligent in rigging the tongs to a “dead line.” A dead line is a cable, one end of which is tied to the tongs and the other to the derrick. When a dead line is used the operator of the tongs may not move them vertically.
The appellants contend that the proper way to rig the tongs is by “counterweight.” In counter-weighting tongs, a “bucket” and the tongs are connected to opposite ends of a cable which runs through the derrick. The bucket is filled with a weight sufficient to counterbalance that of the tongs thus facilitating vertical movement. The availability of vertical movement when using the tongs is beneficial where the drilling operator fails to stop the pipe joints directly in front of the tongs.
The appellants’ first assignment of error is that the jury rendered a judgment contrary to the evidence presented. More particularly, appellants assert that they more than proved Penrod’s negligence by a preponderance of the evidence and thus the jury verdict is clearly wrong.
Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) is relied on to give the standard of review in jury trials. Arceneaux requires the appellate court to review the record as a whole and from it determine whether or not the jury verdict is manifestly erroneous or clearly wrong.
The appellants have detailed much of the trial testimony in their brief, asking this court to take the testimony as uncontra-dicted and therefore fact. The appellee has not filed a brief to call this court’s attention to contradictory evidence. Nevertheless, it is this court’s duty under Arcen-eaux to review the entire record thoroughly in order that a proper determination may be made.
Penrod’s liability depends upon a showing that it either negligently injured Mr. Thompson, or it failed to exercise reasonable care under the circumstances to avoid exposing him to hazards which could cause injury and are within its control. Doucet v. Diamond M Drilling Co., 683 F.2d 886, 890 (5th Cir.1982); Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 167, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981).
The appellants contend that Penrod rigged the tongs, and in doing so set them too high and too far away from the pipe joints, causing Mr. Thompson’s injury. They offered the testimony of Mr. Donald Strauss and Mr. Thompson to show that *1210 the tongs were too far. They testified that the tongs were hung so far from the pipe joints that it required great strain to push them close enough to make connections. Mr. Thompson states it was that strain which caused his injury. Neither of them complained to the driller, who is in charge of the drilling floor, about their problems, stating that they feared doing so would endanger their positions.
Contradicting their testimony was that of Mr. Bradley Burgdhoff. He came on shift right after Mr. Strauss, and one shift before Mr. Thompson. He testified that the tongs were hung too close. He stated that he climbed up into the derrick and chained the cable back so that the tongs were three to four feet from the pipe joints and, with the aid of the roughnecks, could be easily brought forward. There was no evidence that Mr. Burgdhoff s alterations were modified before Mr. Thompson’s shift. The plaintiffs’ expert in rig operations, Mr. Kenneth Kaigler testified that if Mr. Burg-dhoff’s testimony is to be believed, then there would be no problem with the tong’s distance from the pipe joints.
The question of the tongs’ distance from the pipe is a factual one. While Mr. Strauss and Mr. Thompson testified that the tongs were at least six feet away, it is Mr. Burgdhoff’s testimony which should carry greater weight. Mr. Strauss’ testimony was discredited by the plaintiffs’ expert because he felt that the tongs could not be operated if hung from the distance testified to by Mr. Strauss.
Even if Mr. Strauss’ testimony is taken as true, it is still irrelevant as to how the tongs were hung at the time of the injury. Mr. Burgdhoff modified the tongs’ distance after Mr. Strauss’ shift. There was no testimony regarding further modifications, therefore Mr. Burgdhoff’s testimony was not contradicted.
The plaintiffs offered evidence to attempt to show that Mr. Thompson did not complain about the tongs’ rigging because he feared reprisal from Penrod and/or his own employer. They introduced testimony that complaints were frowned upon because they might retard the work process. Defendant offered the testimony of its witnesses, the two drillers on Penrod Rig 86 at the time of the alleged accident. The drillers stated that the tong operator is responsible for the rigging of the tongs and if something about them needed changing compliance was made with his request, as a matter of course.
Lending some credence to this testimony are Mr. Burgdhoff’s actions. He neither requested nor complained about the distance of the tongs. He simply made the adjustments necessary to ease his performance.
Appellants’ asserted at trial that the height at which Penrod hung the tongs contributed to Mr. Thompson’s injury. It was brought out through testimony that “air slips” were being used during the working process. Further that the “air slips” were requested by Amoco and that Rebel knew beforehand of their use. Lastly, it was shown that the use of “air slips” raises the working platform and in doing so, raises the level at which the tong operator works. One can infer from the testimony that the use of air slips is a common practice. When questioned about the height of the tongs on cross-examination, the plaintiffs’ expert who had previously formed the opinion that the tongs were rigged too high, changed his opinion, stating that the height was unavoidable given the use of the “air slips.”
The appellants claim that the manner in which the tongs were rigged, dead lined as opposed to counter-weighted, created a hazardous condition. To prove this they offered Mr. Kaigler’s testimony. He stated that the dead line did indeed create a hazardous condition. He classified it as hazardous due to the threat of a pipe slipping while in the grasp of the tongs. He testified that in such an instance the combined weight of pipe and tongs might be too much for the cable from which the tongs were suspended, causing it to snap and the whole thing to fall.
On cross-examination, Mr. Kaigler admitted that the hazardous condition created by the use of a dead line was unrelated to the distance and height of the tongs at issue in *1211 the current proceeding. In fact, he testified that under the circumstances stated earlier, he found no problem with the height and distance.
We are also faced with the question of whether or not the plaintiffs showed that it was Penrod’s responsibility to rig the tongs. Mr. Ronald Mouton, a Rebel tong operator on shift with Mr. Thompson, testified that the tong operator is responsible for rigging the tongs. Mr. Donald Wayne Johnson, operations manager for Rebel and qualified, over objection, as an expert in tong operation, testified that the tong operator and the drill crew decide how to rig the tongs. The defendant’s witnesses, both drillers, testified that the tong operator decides how to rig the tongs as he is the one who will be operating them. All of this testimony could raise inferences in the minds of the jurors that Penrod was not responsible for rigging the tongs, much less any injury their rigging allegedly caused.
Lastly, Mr. Thompson asserted that he was pushing the tongs to the pipe by himself at the time of the injury. He stated that he received no help from the roughnecks at that time because they were either on lunch break or busy with other duties. There is contradictory evidence from the defendant’s witnesses as well as some of plaintiffs’ witnesses which suggests that roughnecks were, at all times, assisting the tong operator with moving the tongs.
The jury heard all of the foregoing testimony. Being present at trial, they were able to scrutinize the witnesses and make important determinations which could influence the verdict. Much of the evidence offered demanded credibility decisions on the jury’s part. None of it was so clear cut as to overwhelmingly demand belief.
As stated before, in order to reverse the jury, this court must find that its findings of fact are clearly wrong. Having reviewed the record and trial testimony we find many issues which required factual determinations of the jury. We cannot say that their determinations and ultimately the verdict were clearly wrong.
The plaintiffs’ second assignment of error is that the trial court erred in denying the motion for judgment notwithstanding the verdict and the motion for new trial.
Again the plaintiffs base their argument on the number of witnesses they produced, the witnesses’ allegedly uncontradicted testimony, and the fact that, the defendant offered very little in the way of opposing witnesses.
The standard of review for judgment notwithstanding the verdict was first set out by this court in Campbell v. Mouton, 373 So.2d 237, 239 (La.App. 3rd Cir.1979), where it utilized the language of the U.S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969). The court in Campbell adopted the following standard:
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover’s case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the ease submitted to the jury.
The hearing on the motion was not made apart of the record and so this court can not take notice of what was presented to the trial court during argument. We can, however, use the evidence in the record to determine that the plaintiffs’ case was not so strong as to prevent reasonable men from arriving at a contrary verdict. The trial court was correct in denying the motion.
On a motion for new trial, the trial court must grant it when the verdict is *1212 “clearly contrary to the law and evidence.” La.Code Civ.P. art.1972. The standard is different from judgment notwithstanding the verdict in that the trial court judge is free to draw inferences and conclusions without favoring either party. Jones v. Northbrook Ins. Co., 544 So.2d 742, 750, 751 (La.App. 3rd Cir.1989), citing Pellerin v. Tudor Const. Co., 414 So.2d 403 (La.App. 1st Cir.1982), writ denied, 420 So.2d 455, appeal after remand, 479 So.2d 498, certiorari denied, 479 U.S. 824, 107 S.Ct. 96, 93 L.Ed.2d 47.
We examine the record to determine whether the trial court abused its discretion. Again, we re-emphasize that the evidence presented was not clearly contrary to the verdict. The. trial judge had the opportunity to see and hear all the testimony, as though he was an additional juror. Obviously, by his denial of the motion, the conclusion he reached was in accord with that of the jury. The evidence in the record supports such a conclusion. We find this was not an abuse of discretion.
The judgment on the verdict as well as the denials of the motions for judgment notwithstanding the verdict and for new trial, are affirmed.
AFFIRMED.